KYES, Appellant, vs. ST. CROIX COUNTY and others, Respondents.

*September 8 — November 16, 1900.*

**(1, 2)** *Injunction against illegal bond issue: Right of taxpayer to sue.* **(3–5)** *Counties: Bonds: Limitation on amount: Providing for collection of tax to pay them.*

1. A taxpayer may maintain an action to restrain the illegal issuance of county or municipal bonds or the unlawful incurring of municipal debt, because of his liability to taxation to meet the proposed bonds or debt, without showing himself to be directly interested in the performance of the act, omission of which causes the illegality.

Kyes vs. St. Croix Co. and others.

2. Where the issuance of county bonds would be illegal because of the failure to make an irrepealable provision for the collection of a direct annual tax sufficient to pay them, as required by sec. 658, Stats. 1898, a taxpayer of the county has a direct pecuniary interest to be affected by such failure; for such a provision would tend to enhance the price of the bonds, to the benefit of the county and the relief of the taxpayer.

3. Bonds issued for the construction of a county insane asylum, under sec. 603, Stats. 1898, are not issued "to provide county buildings," within the meaning of sec. 658, Stats. 1898, limiting the amount to which bonds for the latter purpose may be issued.

4. Sec. 658, Stats. 1898, provides that no bonds shall be issued thereunder unless the resolution or ordinance of the county board, authorizing the same, "shall also provide for the collection of a direct annual tax sufficient to pay the interest as it falls due and to pay the principal within the time fixed therefor." Sec. 659 provides that "the tax provided therefor shall be incapable of repeal, but shall be annually collected," etc. *Held*, that a resolution declaring that "there shall be annually levied by the county board . . . at the annual sessions thereof . . . a direct annual tax sufficient to pay," etc., does not provide for the *collection* of such tax, as intended and required by sec. 658, but is only a promise or a command, not binding upon future county boards.

5. Compliance with such requirement of sec. 658, Stats. 1898, cannot be held unnecessary, nor can the bonds be held valid in spite of noncompliance, even if a clear and imperative duty to raise an annual tax to meet the bonds is imposed by law or by the constitution upon the county.

APPEAL from an order of the circuit court for St. Croix county: B. F. DUNWIDDIE, Judge. *Reversed.*

Appeal from an order sustaining demurrer to a complaint by the plaintiff, a taxpayer, on behalf of himself and other taxpayers, to enjoin the execution, delivery, negotiation, and sale of certain county bonds, and to enjoin certain of the defendants, designated as a committee, from tearing down or removing old county buildings, or contracting for the building of new. The complaint alleged a resolution by the county board for the issue of $50,000 of bonds to provide for the cost of proposed court-house, jail, and sheriff's resi-

dence, which by the same resolution were authorized to be contracted for by a committee of three persons named as defendants, to be residents of the county; and to have full power to adopt plans and specifications, execute contract, supervise the construction, and direct the signing of orders by the chairman and county clerk from time to time to pay therefor.

The grounds of invalidity alleged in the complaint were— *First*. That the county, having an assessed valuation of $5,579,504, was already indebted in the sum of $65,000 for bonds issued to build a county asylum for chronic insane, which, with the proposed $50,000, would exceed one and one-half per cent. of the valuation. *Second*. That the resolution aforesaid made no provision for the collection of any tax to meet the interest or principal of said bonds, except the following: " There shall be annually levied by the county board of said *St. Croix County*, at the annual sessions thereof, upon the taxable property of *St. Croix County*, a direct annual tax sufficient to pay the interest upon said bonds as it falls due, and to pay the principal of the same within the time fixed therefor." *Third*. That the delegation of authority to the committee was unlawful. The defendants opposed each of these contentions, and themselves assert, in addition, that the plaintiff, as a taxpayer, cannot invoke the aid of the court by injunction, even though the proceedings be held unlawful in any or all of the respects aforesaid.

For the appellant there was a brief by *E. B. Kinney* and *E. B. & R. E. Bundy*, and oral argument by *E. B. Bundy*.

*James A. Frear*, district attorney, and *A. L. Sanborn*, of counsel, for the respondents, contended, *inter alia*, that the resolution in question contains a sufficient provision for the collection of a tax, as required by secs. 658, 659, Stats. 1898, and sec. 3, art. XI, Const. *Bassett v. El Paso*, 88 Tex. 168; *Mitchell Co. v. City Nat. Bank*, 91 Tex. 361; *City Council of Dawson v. Dawson W. W. Co.* 106 Ga. 696; *State ex rel.*

*Spring Lake v. Pierce Co.* 71 Wis. 321; *Morton, Bliss & Co. v. Comptroller Gen.* 4 S. C. 430. The provisions of the statute are read into and form a part of the resolution. The constitutional provision is self-executing. No supplemental legislation is necessary to make it effectual. Cooley, Const. Lim. 100; *East St. Louis v. People ex rel. Gundlach,* 124 Ill. 655; *East St. Louis v. Amy,* 120 U. S. 600; *Frantz v. Jacob,* 88 Ky. 525.

The following opinion was filed September 25, 1900:

DODGE, J. 1. The first objection raised to the complaint is that the plaintiff is not entitled to maintain this suit, though a taxpayer. The general right of such a plaintiff to invoke the preventive aid of a court of equity against the illegal issue of county or municipal bonds, or unlawful incurring of municipal debt, because of the threatened burden on him as a taxpayer, is too well established by decisions of this court to justify discussion. *Peck v. School Dist.* 21 Wis. 516; *Lawson v. Schnellen,* 33 Wis. 288; *Lynch v. E., L. F. & M. R. Co.* 57 Wis. 430; *Fowler v. Superior,* 85 Wis. 411.

Respondents seem to urge, however, that interest because of liability to taxation to meet the proposed bonds or debt is not sufficient, but that plaintiff must show himself directly interested in the performance of the act, omission of which causes the illegality; at least, such seems to be the force of the argument that only the bondholder is interested in having provision made for the collection of a tax to meet principal and interest. This is a novel contention, and smacks of overrefinement. It is not because plaintiff is affected by nonprovision in advance for a tax, but because he is affected by the burden of a debt, either actual or ostensible, about to be cast on the taxpayers illegally, that he may be heard in equity to enjoin it. Thus, in *Lynch v. E., L. F. & M. R. Co.,* *supra,* the illegality of bonds was predicated upon the form of submitting a question to popular vote, and upon the fact

that the railway company claiming the aid had procured another company to build the road for it. Obviously, in neither of these facts had the individual taxpayer any valuable interest, but he was held entitled to sue. Much the same is true of others of the cases cited above, which therefore repudiate the distinction now contended for.

It is apparent, however, that plaintiff had a direct pecuniary interest to be affected by failure to provide fully by irrepealable legislation for a tax to meet these bonds; for such a provision would tend to enhance their price to the benefit of the county treasury, and therefore to the relief of himself as a taxpayer.

2. The first question as to the legality of the proposed bonds depends on whether the other bonds issued for the construction of a county insane asylum, under sec. 603, Stats. 1898, are within the terms of sec. 658, limiting the issue of bonds for county buildings to one and one-half per cent. of the assessed valuation. Upon examination of the statute, we find under the title "County Government," and in ch. 35 ("Of General Provisions Relating to Counties"), sec. 656: "Each county shall, at its own expense, provide at the county seat a court-house, a jail, fireproof offices, and other necessary buildings, suitable to their proper uses," etc.; and sec. 658: "Any county may issue bonds in the manner hereinafter provided for the following purposes: (1) To provide county buildings; but no county shall issue bonds for such purpose to an amount exceeding one and one-half per centum upon the assessed valuation of taxable property." The first of these sections dates from 1849, and the latter from 1872. In 1878 was adopted certain legislation authorizing the construction of asylums for the chronic insane in such counties as the state government might approve, the purpose of which evidently was to perform a part of the duty of caring for the insane theretofore performed by the state. The state joined with the counties in

the construction and maintenance. This legislation crystallized in 1893 in what is now sec. 603, Stats. 1898: "Any county board may, with the consent of the state board of control, purchase a site for an asylum for the chronic insane, and erect thereon . . . buildings for the care of such insane, and levy taxes and issue bonds to defray the cost of such site and buildings," etc. Then follow provisions as to the maintenance of such asylums, the care of insane chargeable to the county, and of chronic insane committed to it from other counties, with provision for the payment for their support, part by the state and part by the counties from which they came. This legislation, both in the Revised Statutes of 1878 and in the Wisconsin Statutes of 1898, is contained under the title, "Public Charities," and in ch. 32, "Of the State Hospitals and County Asylums for the Insane." The county asylum need not be built at the county seat, as was required by sec. 656 for the buildings therein mentioned, to which from its contiguity sec. 658 would seem to relate. An inspection of the course and form of this latter legislation makes it, we think, entirely obvious that the legislative purpose therein contained was to enlarge the powers of the counties, and that the erection and maintenance of county asylums for the chronic insane was an added power, not intended to be restrained by the then existing provisions of sec. 658. This conclusion is aided by the consideration that the erection of such asylums, in theory at least, brought to the county a revenue resulting from the saving of what it must otherwise pay to the state, and from contributions by the state toward the support of inmates, so that the ordinary revenues of the county would be relieved and increased to an extent more than sufficient to cover the interest on the cost of the asylum. It is well known that most of the counties which in fact constructed county insane asylums did so with the expectation that they would be productive of actual profit, which expectation was

apparently realized in some instances. The situation is not different in principle from that presented to this court in *Oconto City W. S. Co. v. Oconto*, 105 Wis. 76, where it was held that subsequent authority to a city to contract for a water supply was not restrained by the pre-existing limitation in its charter upon taxation. We conclude, therefore, that the bonds issued for a county insane asylum are not to be considered within the limitation of one and one-half per cent. prescribed by sec. 658.

3. A further ground of illegality in the issue of the proposed bonds is the asserted failure to obey that clause of sec. 658, as follows: "No bonds shall be issued hereunder except in pursuance of the resolution or ordinance . . . passed, . . . nor unless such resolution or ordinance . . . shall also provide for the collection of a direct annual tax sufficient to pay the interest as it falls due and to pay the principal within the time fixed therefor." This is followed by sec. 659, enacted at the same time: "For the punctual payment of the principal and interest of such bonds the faith of every county issuing the same shall stand irrevocably pledged, and the tax provided therefor shall be incapable of repeal, but shall be annually collected in addition to all other taxes and be kept as a separate fund and applied to that sole purpose." Does the resolution quoted above, declaring that "there shall be annually levied by the county board," etc., provide for the *collection* of such tax as intended and required by sec. 658? It is historical that the years preceding 1872 were characterized by attempts at repudiation of their bonds by several of the subordinate political divisions of this state, and the courts, both state and federal, found themselves without power to fully frustrate these attempts. 2 Dillon, Mun. Corp. (4th ed.), § 861, note; *Rees v. Watertown*, 19 Wall. 107. The insuperable difficulty met by the courts was their inability to coerce the legislative steps towards taxation necessary to cast a duty of collection

upon the clerical and ministerial municipal officers, and their inability to assume and perform the functions of the municipal legislatures, when, as was the practice, those legislatures had gone out of existence by resignation of their members. The people of the state generally evidently did not approve, and, appreciating at once the dishonor and the practical disadvantage of an impairment of the credit of their municipalities, by legislation, in ch. 184, Laws of 1872, afterwards modified in the revision of 1878, and by popular vote upon the amendment of 1874 to sec. 3, art. XI, of their constitution, sought to supply the one step to coerce which the power of the courts had been found inadequate, and enacted that before such corporations could send their bonds into the financial world the legislative step necessary to the prompt and regular *collection* of taxes to meet principal and interest must be taken, and should thenceforward be irrevocable.

Such having been the purpose of this legislation, it seems obvious that the resolution under examination does not satisfy it. That resolution in no sense purports to be a final and complete exercise of the county board's legislative function to levy a tax so that the county clerk's duty to apportion it, and that of the town officers to collect it, is cast upon those officers. It is by its terms only a promise on behalf of, or a behest to, future county boards that they shall perform the duty year by year which the law imposed on the board of 1899 to be performed once for all time. One county board cannot bind its successors either by a promise or a command. The object of the law is not accomplished. The prospective purchaser of the bonds is not assured that there has been cast upon the ministerial officers an imperative and irrevocable duty to collect money to pay his interest and principal when they collect other taxes, so that upon them must fall all the penalties for breach of official duty if they attempt to raise ordinary county revenue without providing

a fund definitely appropriated to him, nor so that may be compelled by *mandamus* each of the acts enjoined upon them by law whenever the county board legislates that a certain sum shall be raised by taxation. See *Morton, B. & Co. v. Comptroller General*, 4 S. C. 430, 451.

It is urged, however, that both the law and the constitution so clearly impose a duty upon the county to raise an annual tax to meet their bonds that *mandamus* would lie to compel it, so that compliance with the requirement quoted from sec. 658 is immaterial. To this suggestion more than one answer is obvious: *First.* That when the legislature deems best to impose a restriction upon the incurring of municipal indebtedness it is for the courts to enforce the restriction, not to declare it unnecessary or unwise. *Second.* Neither the constitution nor any law does impose upon subsequent county boards the duty to levy a tax to meet either principal or interest of these bonds. They stop with the command that such provision shall be made before the bonds issue and that no subsequent board shall repeal it. Therein our laws are distinguished from that under consideration in the case cited by respondents. *Mitchell Co. v. City Nat. Bank*, 91 Tex. 361.

The further answer is that, even if a clear and imperative duty is by law or constitution imposed on the county, that duty rests on the county board, and its enforcement is subject to the infirmities experienced in *Rees v. Watertown*, 19 Wall. 107, and kindred cases, which, as stated above, the very purpose of this legislation was to avert. Concede that without the resolution demanded by sec. 658 it will be the duty of the county board each subsequent year to levy a tax to meet these bonds; concede, too, that *mandamus* will lie to command such levy; experience has shown that by the simple expedient of resignation after they have levied other taxes the sanction of the legislative command and the efficacy of the writ of *mandamus* may both be evaded by the supervisors.

Our conclusion is that the county board did not by its resolution authorizing the bonds in question provide for collection of a direct annual tax to meet interest and principal thereof as required by sec. 658, that their issuance is forbidden by that section, and that the complaint states facts sufficient to constitute a cause of action to enjoin the county officers from further steps toward that end.

The conclusions already reached necessitate a reversal of the order sustaining the demurrer, and a direction to overrule the same. We deem it unnecessary, therefore, to decide the important, and somewhat doubtful, question as to the validity and effect of the delegation of so broad and unusual discretion and power to a committee, which may become immaterial, or may be presented more fully, or in a different light, by facts to be disclosed upon full answer and trial. We therefore refrain from expressing our views thereon.

*By the Court.*— The order appealed from is reversed, and the cause remanded with directions to overrule the demurrer.

On a motion for a rehearing counsel for respondents contended that there is an important and radical distinction between counties and other municipal bodies. A city council can, but *a county board cannot*, so levy a tax for the future as to exclude legislative action by future boards. It is absolutely impossible for one county board to exhaust the legislative duty of taxation. It cannot in any possible way " cast upon the ministerial officers an imperative and irrevocable duty to collect money to pay his interest and principal when they collect their taxes," because there still remains a legislative duty — that of apportionment — *which can only be done from year to year.* The resolution in question, by determining the amount of the tax, and commanding its levy by future boards, went as far as possible, and the action is valid.

The motion was denied November 16, 1900.