BORNER, Appellant, vs. CITY OF PRESCOTT and others, Respondents.

*May 14—June 4, 1912.*

*Municipal corporations: Bonds for `improvements: Statutes construed: Double purpose: Intent: Presumption: Constitutional law: Provision for collection of tax: Levy: Amounts: Option to pay in instalments: Interest: Departure from ordinance: Injunction: Taxpayers' action: Defense arising after commencement: Judgment: Modification on appeal.*

1. The statute (sec. 925—133, Stats. 1898) relating to the issuance of municipal bonds for public improvements must be liberally construed to effectuate the purpose intended.
2. An ordinance under that statute providing for the issuance of bonds "to defray the cost of constructing waterworks and connecting sewers" does not necessarily include a double purpose, but in support of the validity of the ordinance it should, if necessary, be presumed that but a single scheme was intended, requiring connecting sewers as part of it.
3. The requirement of sec. 3, art. XI, Const., that no municipal bonds shall be issued until the municipality shall first "provide for the collection of a direct annual tax sufficient to pay the interest as it falls due, and also to pay the principal within twenty years," is satisfied by an ordinance levying *in præsenti* a tax of the requisite amount, specifying the sums to be

raised each year, since the duty of collecting the tax in the usual way is thereby imposed upon the proper officers by force of law, and its performance may be compelled by *mandamus*. *Kyes v. St. Croix Co.* 108 Wis. 136, and *Bingham v. Milwaukee Co.* 127 Wis. 344, distinguished.

4. The tax levied for any one year need not be for the precise amount payable that year, but it is enough that the sums as levied suffice to meet the principal and interest as they mature.

5. The provision of the statute that "all such bonds shall be payable at the option of the city in annual instalments," means only that the city may, at its option, make the bonds payable all at one time or a part of them each year.

6. The provision that the bonds "shall bear interest not exceeding six per cent. per annum payable semi-annually," does not require the interest to be paid semi-annually, but only that the amount to be paid shall not exceed semi-annual interest at the rate named.

7. An ordinance provided for issuance of bonds to mature all at one time, but without amending it the city proposed to insert in the bonds a provision giving it an option to retire certain amounts at certain times before maturity. In an action by a taxpayer to restrain the issuance of the bonds the city answered that it had abandoned the purpose of departing from the ordinance, and at the time of the trial it intended to conform strictly to the terms thereof. Plaintiff having, however, persisted with the case upon the ground stated and upon other grounds which were untenable, it was proper to dismiss the action with costs, for the reason that it had been unnecessarily pursued to the prejudice of the city; but the judgment of dismissal, having inferentially passed upon and approved the option form of bonds, is modified on appeal so as to leave that question undetermined.

APPEAL from a judgment of the circuit court for Pierce county: JAMES O'NEILL, Judge. *Modified and affirmed.*

Taxpayer's action to restrain issuance of bonds by the city of *Prescott.* The issues, as to facts, were determined thus:

All facts. exist affording plaintiff, suing as he did, legal capacity to maintain the action, if the proposed bonds would be illegal, and defendants are proper parties.

September 6, 1910, the common council of defendant city passed an ordinance purporting to authorize issuance of the bonds in question, such ordinance containing recitals showing that they would not exceed the city's legal capacity to incur indebtedness, and providing, in terms or effect, as follows:

The city of *Prescott* shall issue $17,350 of municipal bonds to defray the cost of constructing waterworks and connecting sewers in such city, pursuant to ch. 235 of the laws of the state of Wisconsin for the year 1907. The bonds shall be in denominations of one thousand dollars or five hundred dollars, except one of three hundred and fifty dollars; each shall be dated December 15, 1910, made payable December 15, 1930, and bear interest at four and one-half per cent. per annum, payable annually, both principal and interest payable at the office of the city treasurer. There is hereby levied on all taxable property in the city of *Prescott*, thirty-two thousand nine hundred and sixty-five dollars, of which seventeen thousand three hundred and fifty dollars is for payment of the principal of said bonds and the balance for payment of the interest thereon. Said total sum shall be collected, sixteen hundred and forty-eight and 25/100 each year, commencing with 1911, to and inclusive of 1930. The amount collected each year over and above sufficient for the interest as the same falls due shall constitute a sinking fund to be conserved and devoted to paying the principal of the bonds at maturity.

Pursuant to such ordinance the city of *Prescott*, acting by its proper officers, advertised for bids for said bonds and, in due course, accepted the offer of H. T. Holtze & Co. therefor, the same to be dated and made payable according to the ordinance and to contain a provision giving the city the option to take up $3,000 thereof in three years from date, $4,350 in ten years from date, and $5,000 in fifteen years from date, and $5,000 in twenty years from date.

Up to the commencement of the action the city officers proposed issuing the bonds in accordance with said accepted offer. Thereafter the option feature was withdrawn by the

bidder and such officers abandoned the idea of selling bonds otherwise than in conformity to the ordinance and laws of the state in respect to the matter.

The complaint contained allegations in conformity to the findings as to the status of things at the time the action was commenced.

As conclusions of law the trial court held that the complaint failed to state a cause of action; that defendant city, by virtue of the ordinance, providing as indicated in the findings, possessed authority to issue the bonds on the offer of H. T. Holtze & Co. with the option feature thereof, and that the action should be dismissed with costs. Judgment was rendered accordingly.

For the appellant there was a brief by *White & Skogmo* and *W. C. Owen,* and oral argument by *Mr. Owen.*

For the respondents there were separate briefs by *Jesse S. Field* and *Spencer Haven,* and oral argument by *Mr. Haven.*

MARSHALL, J. The respondents had power under sec. 925—133, Stats. (1898), as amended by ch. 235, Laws of 1907, to issue municipal bonds for constructing waterworks and sewers. The language thereof necessary to be examined is as follows:

"All such bonds issued shall be payable at the option of the city in annual instalments, the last instalment being payable not more than twenty years after their date, and shall bear interest not exceeding six per cent. per annum payable semi-annually, and that the council shall have provided for the collection of a direct annual tax sufficient to pay the interest thereon as it falls due and to pay and discharge the principal thereof within twenty years from the date of the issue of such bonds."

The main question is, Does the ordinance and proceedings to adopt it satisfy such section? The language of the law, it must be confessed, is not free from ambiguity. However, the purpose is plain. It was to enable municipalities to obtain,.

without unduly burdening taxpayers, means for making public improvements, on favorable terms. It must be liberally construed to that end by a very familiar rule. Any meaning which would render it absurd, difficult to comply with, or impair the character of the securities in the judgment of investors, is to be rejected in favor of a contrary meaning, if the language reasonably expresses both meanings. None should be given thereto, if it can reasonably be avoided, which would violate the plain purpose.

In certain cases, under certain conditions, including the present instance, an ordinance authorizing issuance of bonds under such section does not require a vote of the electors.

The vote by the council was, as indicated in the ordinance, to issue bonds "to defray the cost of constructing waterworks and connecting sewers." It is said that includes a double purpose and one act of voting, which counsel insist was unqualifiedly condemned in *Neacy v. Milwaukee,* 142 Wis. 590, 126 N. W. 8. Not so, the question there was different from the one here. There was a distinct double purpose. Bonds could be legally issued but for one of them. The proposition embodying the two was submitted and acted upon by the electors as a single matter. In such circumstances, it was held, that the illegitimate purpose might have been the controlling one in securing the favorable vote; so, it could not be seen whether the electors would have decided in favor of the bonds for the legitimate purpose, by itself, or not.

Here, as indicated, if it be conceded there was a double purpose, both were within the statute. Whether, in such a case, submission of the matter to the council by a single proposition would satisfy the statute, we need not decide. Certainly it would not be within the condemnation of *Neacy v. Milwaukee, supra.* Furthermore, the fact that here the vote was by the common council, not the electors, might make a difference.

But it is considered the purpose, as the council understood

the matter, was not, necessarily, double. If it was improper to include two matters in a single proposition, it must be presumed the council did not so intend, if a legal intent can be reasonably read out of the language used. It is fair to assume, from such language, that there was a single scheme requiring connecting sewers as a part of it. That the two elements were so treated as one, can be fairly seen in the ordinance. That being so, it would hardly do to hold the connecting sewers, necessarily, involved a purpose distinct from the waterworks for the purpose of condemning the action of the common council as void, unless the contrary would be highly unreasonable from any viewpoint.

The next proposition is, that the ordinance does not "provide for the collection of a direct annual tax sufficient to pay the interest" on the bonds "as it falls due and discharge the principal thereof within twenty years from the date of the issue of such bonds." That was incorporated into the statute to comply with the language of sec. 3, art. XI, of the constitution, adopted in 1874. The wording thereof is this:

"Any county, city, town, village, school district or other municipal corporation incurring any indebtedness as aforesaid shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same."

The purpose of the provision is obvious as has been heretofore stated by this court. *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637; *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071. It is to prevent issuance of bonds in advance of irrevocable provision being made to raise whatever money will be necessary to seasonably satisfy the obligations thereof, leaving only the matter of performing plain duty on the part of public officers, which can be compelled, if necessary, by

*mandamus.* Difficulty had been experienced by municipalities voting bonds and obtaining money thereon and then refusing to vote and collect the necessary tax to pay the same; thereby greatly injuring public credit and tending to render it impracticable for public corporations to borrow money except at a ruinous rate of interest, if at all.

A vote levying *in præsenti* a direct annual tax sufficient to meet the case is a provision for the collection of the tax. A vote levying a tax is a vote that the amount contemplated shall be collected by taxation in the ordinary way. A vote levying an annual tax for a specific number of years is one that the amount contemplated shall be each year collected in the ordinary way. The statute does not contemplate any particular collection of words so long as its object be satisfied. Language, in terms, levying, *in præsenti,* a direct annual tax on all the taxable property of a municipality sufficient to pay the interest on specified bonds as it falls due and to pay and discharge the principal thereof as they mature, using the language of the statute, substantially, only varied to meet the particular case, would doubtless be sufficient. The dominating thing is to require the creation of an official duty on the part of the municipal officers to collect, annually, from or on account of the taxable property, the necessary amount of money; that each year such amount will, at the proper time, be, by the proper officers, spread upon the tax roll, as a direct tax upon the taxable property of the municipality, and be, *by the proper officers,* duly collected.

The word "levy" in tax matters has various meanings according to how it is used. *Bradley v. Lincoln Co.* 60 Wis. 71, 18 N. W. 732; *Southern R. Co. v. Kay,* 62 S. C. 28, 39 S. E. 785; *Hohenstatt v. Bridgeton,* 62 N. J. Law, 169, 40 Atl. 649; *State v. Lakeside L. Co.* 71 Minn. 283, 73 N. W. 970. Thus, the meaning is to be discerned by the context in the particular instance, as said often in decisions: "It is some-

times used for the purpose of conferring all the powers incident to the creation and collection of a tax," *Southern R. Co. v. Kay, supra,* or requiring all things to be done in order to procure the taxes, *Hohenstatt v. Bridgeton, supra.*

So a vote levying a tax includes all necessary to be done to realize on it,—levying, in the sense of spreading the amount on the tax roll and the collection of it by the proper officers, including the levying upon—seizing if necessary—property subject thereto; because, when a tax is voted or a vote is had levying a tax, the duty necessarily follows, by force of law, for the proper officers to take the necessary steps to collect the same and that may be compelled by *mandamus.*

Applying the foregoing to the ordinance in question, the words "There is hereby levied on all the taxable property in the city of *Prescott* thirty-two thousand nine hundred and sixty-five dollars," standing alone, would require the city clerk to spread that amount on the next tax roll of the city and, the clerk having performed his duty in regard to it, the treasurer to collect the same. In other words, it would be a provision, *in præsenti,* for the collection, as a tax for the particular year, of the sum named. But the language does not stand alone. It is modified by the provision requiring the collection each year, during the life of the bonds, of a specified amount for interest and a specified amount for principal, enough as appears "to pay the interest of the bonds as it falls due and to discharge the principal thereof" at maturity and "within twenty years from the date of issue." It seems that the statute on the subject was fully complied with.

The difficulty in *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637, was that, instead of levying or voting the tax, *in præsenti,* so that no subsequent county board would have anything to do with the matter in case of the bonds being issued in the meantime, the language of the resolution was "There shall be annually levied by the county board." So the ques-

tion was whether that was a present provision for the collection of a direct annual tax sufficient to seasonably meet the obligation created by issuance of the bonds. It was not thought but that, had the resolution been to the effect that, there is hereby levied a direct annual tax sufficient to satisfy the requirements of the statute, it would be all that was necessary; but, that one county board cannot bind a succeeding one; that the language used only amounted to a promise that any future county board would formally levy the necessary amount of taxes, leaving bondholders with no remedy in case of default but to bring suit to collect which was the very condition the constitutional provision and the statute intended to prevent. "The rule of the statute," said the court, is that before or at the time of the issuance of bonds there shall be "cast upon the ministerial officers an imperative and irrevocable duty to collect the money to pay" the interest and principal when they collect other taxes. Such was done in this instance.

Counsel rely upon *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071, where the language of the ordinance was somewhat different than in this case, in that, it, in terms, made a present levy of a specified amount to pay bonds falling due, and a specified amount to pay interest, for each year during the life of the bonds; and this court, in deciding the point at issue, said: Following the rule of *Kyes v. St. Croix Co., supra,* "It is evident that the action taken in the present case was correct, and indeed the only action which would satisfy the constitutional and statutory requirements."

It must be confessed that such language, viewed apart from its context and the point under discussion, might condemn the action of the council in this case. But the court was merely speaking about the necessity of a present levy of a tax to provide for the obligations created by the bonds, not about any particular phrasing in respect to the matter. There was a

present levy of the tax,—that was conceded,—and there was no question raised but that it might have been accomplished in other ways, as by naming a sufficient sum for each year to keep up payments as they became due, or levy a sufficient sum for each year, leaving the particular amount to mathematical computation by the taxing officers. But the question was, as to the power of one board to levy a tax for any beyond the current year. That was decided in the affirmative. To the feature of the ordinance accomplishing that, this language was used: "The action was the only action taken which would satisfy the statutory requirements." If specified amounts had been levied each year, not specially with reference to the bonds and interest falling due in such year, but, money "to pay the interest" on the bonds as it would fall due "and to pay and discharge the principal" at maturity, that being within twenty years from the date of the bonds, or the council had voted an annual tax of a sufficient sum therefor so that the particular amount required each year for bonds and interest falling due such year would be a mere matter of computation, doubtless the court would have used the same language, since the only point was whether the board could levy a tax for a subsequent year.

The next proposition presented is that the ordinance does not provide that the bonds shall be payable in annual instalments at the option of the city. The language of the statute as to that cannot well mean that every bond shall be paid in instalments, and that there shall be an option clause therein which may be exercised, from time to time, at the pleasure of the city after issue of the bonds. That would make the law quite absurd, since it evidently contemplates issuance of bonds in the ordinary way, with interest coupons, if desired. So the language must be taken to mean that, the municipality may, at its option, make the bonds payable all at one time, or in instalments from time to time,—that is, a specified number of bonds each year.

The next point is, that the ordinance does not provide that the interest on the bonds shall be paid semi-annually. The word "semi-annually" is used in the statute, as will be seen, in this connection, "not to exceed six per cent. per annum, payable semi-annually." It is considered that the legislative intent was not to require the interest to be paid semi-annually, but to limit it so that the amount paid for use of money borrowed should not exceed semi-annual interest at the rate named.

The further point is made that the city had no authority under the ordinance to make the bonds payable, a specified number at the end of each of several specified terms, as contemplated by the accepted bid, instead of all December 15, 1930, as contemplated by the ordinance. It is a sufficient answer thereto that the city abandoned the purpose of departing from the ordinance, so alleged in its answer, and at the time of the trial intended to conform strictly to its terms. If when the answer came in appellant had offered to take judgment as prayed for with costs up to that time, upon the ground that the purpose was to depart from the ordinance when the action was commenced, there might be some merit in the appeal as to this particular feature. We are inclined to hold that, technically, the city had no right to depart from the ordinance, except by amending it. Whether the proposed departure worked any prejudice at all to taxpayers which would justify equitable interference is another question.

Since the appellant persisted with the case on all points raised, after the answer came in, the trial court might well have dismissed the action with costs to the respondents upon the ground that it had been unnecessarily pursued to the prejudice of the city after all danger was over, which, in any event, was a proper subject of complaint, leaving the subject of whether the city could properly sell the bonds according to the terms of the bid, which is by no means free from doubt, out of the case. It is thought best to modify the judgment,

so far as it might be construed with reference to the ordinance as covering that matter, and to affirm it as a mere judgment of dismissal on the merits otherwise, which may be done without passing, one way or the other, on the matters unnecessarily included in the findings and inferentially in the judgment.

*By the Court.*—Judgment is so ordered with costs to the respondents.