3] JANUARY TERM, 1920. 197

State ex rel. Melms v. Young, 172 Wis. 197.

STATE EX REL. MELMS, Plaintiff, vs. YOUNG and others, Election Commissioners, Defendants.

*June 4—July 3, 1920.*

*Counties: Uniformity of government: Nonpartisan nomination and election of county officers: Constitutionality.*

1. Sec. 9, art. XIII, Const., reserves to the people of a county the right to elect county officers unless otherwise provided for in the constitution.
2. The elective franchise may be regulated to prevent corruption and secure to the elector an honest and orderly exercise of the right to cast his ballot.
3. A general law applicable to a class of counties which constitutes a departure from uniformity in county government must rest on facts and existing conditions showing it is not practicable to carry on the county government in the particular class under the law providing for the carrying on of county governments generally throughout the state.
4. Ch. 566, Laws 1919 (sec. 5.265, Stats. 1919), providing for the nonpartisan nomination and election of county officers in counties having a population of more than 250,000, is an unjustifiable departure from the uniform system of county government established by the legislature of the state, and violates sec. 23, art. IV, Const.

THIS ACTION is brought under the original jurisdiction of this court to test the constitutionality of ch. 566, Laws 1919, being sec. 5.265, Stats. 1919.

The statute provides for the nonpartisan nomination and election of county officers in counties having a population of more than 250,000. Under the law, county officers in such counties are to be nominated and elected in the same manner that such officers in other counties are nominated and elected except that the use of party designations is pro-

hibited and the names of the two candidates receiving the highest number of votes for each office are to be printed upon the official ballot at the general election. It is also provided that a separate ballot for such offices shall be provided for both the primary and general election.

*Edwin W. Knappe* and *Horace B. Walmsley,* both of Milwaukee, for the plaintiff.

*Winfred C. Zabel,* district attorney of Milwaukee county, and *William L. Tibbs* and *Daniel W. Sullivan,* assistant district attorneys, for the defendants.

In support of the constitutionality of sec. 5.265, Stats. 1919, there was a brief and also oral argument by *Lawrence Conlan* and *Charles B. Perry,* both of Milwaukee, as *amici curiæ.*

SIEBECKER, J. This is an original action in this court and the relief demanded is that the defendants, as the board of election commissioners of Milwaukee county, be restrained from enforcing the provisions of ch. 566, Laws 1919 (sec. 5.265, Stats.), in the conduct of the 1920 general election for county officers in Milwaukee county. The statute provides for nonpartisan nomination and election of county officers in counties having a population of more than 250,000. County officers in the counties to which the statute applies are to be nominated at a primary and elected at the general election as in other counties, but "all reference to party and party principles shall be eliminated from nomination papers of candidates for such offices. Such papers shall be designated nonpartisan, and shall contain no other designation whatever."

The statute provides that the two persons receiving the highest number of votes cast for candidates for a county office shall be the nominees for such office and none other shall be placed on the official ballot. The names of candidates "for county offices shall be arranged on a separate ballot at both the primary and general elections, under the

designation of the office for which they are candidates, and there shall be no party or other designation whatever placed upon such ballot. The ballots shall be so prepared that an elector may vote for any other person for any county office by writing his name upon the ballot."

All existing statutes applicable to the election of county officers, except where they are not consistent with the provisions of this statute, are to govern the nomination and election of county officers.

The question of the constitutionality of the law is raised. It is insisted that the statute is invalid because it violates the constitutional rights guaranteed by sec. 1, art. I, and sec. 23, art. IV, of the constitution of the state. Sec. 23, art. IV, is as follows:

"The legislature shall establish one system of town and county government, which shall be as nearly uniform as practicable."

The elective franchise may be regulated to prevent corruption and to secure to the elector an honest and orderly exercise of the right to cast his ballot. The right is one secured to him by the constitution. As declared in *State ex rel. McGrael v. Phelps*, 144 Wis. 1, 128 N. W. 1041:

"So the right to vote is one reserved by the people to members of a class and as so reserved, guaranteed by the declaration of rights and by sec. 1, art. III, of the constitution. It has an element other than that of mere privilege."

It is also stated that:

"Constitutional provisions are specific and largely exclusive in regard to the qualifications of voters, but they are necessarily general in prescribing the way in which the voting shall be done, this being left almost wholly to statutory direction." 9 Ruling Case Law, 1046.

Does this statute relate to and deal with local governmental affairs so as to make it a part of the system of county government within the contemplation of sec. 23, art. IV, of

the constitution? Sec. 9, art. XIII, of the constitution provides:

"All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct."

The clear intent and object of this constitutional provision is to reserve to the people of the county the right to elect county officers unless otherwise provided for in the constitution. The right so retained by the people of the counties is thus made a part of the county governmental system of the state. The legislature has carried out this constitutional scheme by appropriate legislation, designating how the county officers shall be elected or be appointed by county authorities. Since the selection of county officers is thus related to and deals with county government, the question recurs: Is the method of nominating and electing county officers as provided in this statute repugnant to the constitutional requirement providing that but one system of town and county government shall be established by the legislature, and that such system shall be as nearly uniform as practicable? It is without dispute that the plan of nominating and electing county officers in the counties of Wisconsin as established by the legislature is radically different from the plan provided for by ch. 566, Laws 1919 (sec. 5.265, Stats.), for counties having a population of over 250,000. The two regulations for electing county officers cannot be treated as being practically a uniform system of county elections. The diversity between the two systems of carrying out the constitutional mandates of arts. XIII and IV, above referred to, in the counties of the state generally and the class of populous counties included in this statute, is so obvious as to require no detailed specification. But it is urged in support of the validity of ch. 566 that the legislative classification of counties as made therein has been ap-

3] . .       JANUARY TERM, 1920.       201 ·

State ex rel. Melms v. Young, 172 Wis. 197.

proved by this court as proper if the classification is based on substantial distinction, is germane to the purpose, if it applies to all members of the classes made, is not based on existing circumstances alone, and permits future additions to the classes as circumstances arise, and that if these characteristics of classification have been followed by the legislature in the adoption of this enactment, then the act is not assailable on the ground that it is class legislation and that it therefore does not violate the requirement that laws shall operate uniformly throughout the state nor the provisions of sec. 23, art. IV, of the constitution. In answer to the claim that the provisions of the last article were designed by the framers to prevent continuance of the existing territorial diversity of county government in different parts of the territory, this court declared:

". . . If such had been the only object, it would have been fully accomplished by the first part of the clause under consideration. When the framers of the constitution had said that the legislature should establish but one system of town and county government, that would have fully remedied the evil. But they did not stop there. They added, that this system should be *as nearly uniform as practicable. In this they must have aimed at the evil of special legislation.* That this is a great and serious evil, every one at all familiar with legislative experience knows. . . . It is an evil that there have been many efforts made to check; and I can conceive of no other motive for the clause in the constitution requiring the system of county and town government to be as uniform as practicable." *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339. See, also, *State ex rel. Peck v. Riordan,* 24 Wis. 484.

In the latter case the court states that—

"Where the legislature has established a system of county and town government substantially uniform throughout the state, it may be conceded that its action is final upon the matter. . . . But, when a law . . . breaks the uniformity of a system already in operation, it seems to us that it is a proper exercise of judicial power to declare that the act is

void, because it departs from the rule of uniformity which the constitution enjoins."

We repeat these expressions of this court interpreting sec. 23, art. IV, to show how these provisions of the constitution were understood and interpreted by those who took an active part in the times of their adoption. A review of the cases in this court wherein this constitutional provision was involved will be found in the opinion written for the court by Mr. Justice TIMLIN in *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N. W. 431. It was there held, in the light of this constitutional provision, that "a general law applicable to a class of counties may provide for reasonable departures from uniformity in county government in cases where it is not practicable to carry on such government in that particular class of counties in the same manner in which it is carried on in other counties outside of its class." The significant thing is that a general law applicable to a *class of counties* providing for a departure from uniformity in county government must rest on facts and existing conditions showing that it is not practicable to carry on the county government in such particular class in the manner that the statute provides for carrying on the county governments in counties generally throughout the state. It follows from this that the generally accepted grounds upon which a legislature may classify subjects for general legislation are not sufficient when it attempts to classify counties within the field relating to the system of county government under the mandate of sec. 23, art. IV. The terms of this constitutional provision expressly inhibit departure from the established uniform system of county government unless it is manifest that it is not practicable to carry on such uniform system of government in a designated class of counties.

Is there anything in the conditions surrounding the exercise of the elective franchise for electing county officers in

populous counties that requires a departure from the meth-
ods and means provided for the exercise of such right in
electing county officers in the less populous counties of the
state to enable the voter to express properly and intelligently
his choice for such office at the ballot box? No satisfactory
grounds of distinction have been brought to our attention
and none are suggested to our minds that could form the
basis of legislation like the act here in question. It is not
sufficient to say that the legislature must have discovered in
the conditions of the densely populated communities good
grounds for departing from the established system of con-
ducting the primary and general elections in counties gener-
ally throughout the state. Under the mandate of the pro-
visions of sec. 23, art. IV, of the constitution, the grounds
for enacting a general law applicable to a class of counties
providing a departure from the established uniform system
of county government must affirmatively appear with rea-
sonable clearness and certainty to warrant such departure.
As above indicated, the conditions under which an elector is
called to discharge his duty in selecting the county officers in
populous counties are no different from those imposed on
the electors in the more sparsely settled communities of the
state. There are no considerations addressed to the elec-
tor in such counties different from those addressed to him
in all counties, nor is there anything in the election machin-
ery applicable to the primary and general elections requiring
a different method of electing county officers in such coun-
ties that cannot be applied with equal facility in all other
counties. A consideration of the established system of
county government, regulating the conduct of elections for
the nomination and election of county officers, shows that it
is a system adapted to and fulfils its objects and purposes
equally well in all of the counties of the state. It is con-
sidered that ch. 566, Laws 1919 (sec. 5.265, Stats.), is an
unjustifiable departure from the uniform system of county
government established by the legislature of the state and

that it violates the provisions of sec. 23, art. IV, and that the board of election commissioners of Milwaukee county must be restrained from following and enforcing the provisions of ch. 566, Laws 1919, in conducting the 1920 primary and general election for county officers of Milwaukee county.

*By the Court.*—Judgment ordered for relator for relief by injunction as prayed for in the complaint. No costs are allowed to either party in this action, the defendants to pay the fees of the clerk of this court.