KROEPLIN, Appellant, vs. COUNTY OF MILWAUKEE and
others, Respondents.

*October 13, 1922—May 1, 1923.*

*Counties: Constitutional law: Uniformity of government: Granting
counties with a certain population power to regulate road-
houses: Police power: Regulation of places for sale of non-
intoxicating liquors.*

1. The regulation of places where non-intoxicating liquors, as de-
fined in ch. 441, Laws 1921, are sold, is within the police
power of the state, which may be delegated to counties.
2. Ch. 321, Laws 1909, giving to boards of supervisors of counties
having a population of 250,000 or more authority to prohibit
enumerated disturbances, nuisances, etc., as applied to the
facts in this case, is violative of sec. 23, art. IV, Const., pro-
viding that the legislature may establish but one system of
town and county government, which shall be as nearly uni-
form as practicable, in that it withholds similar authority
from counties having a less population where it is not im-
practicable to grant it to them.

APPEAL from an order of the circuit court for Milwau-
kee county: G. N. RISJORD, Judge. *Reversed.*

The appeal is from an order overruling the demurrer of
the plaintiff to the answer of the defendants and sustaining
said demurrer as a demurrer to the complaint.

Ch. 321, Laws 1909, is "An act to confer certain addi-
tional powers upon the board of supervisors of counties
having a population of two hundred and fifty thousand or
more," and it provides, among other things, as follows:

"(6) To prevent, suppress and prohibit riots, affrays, the
use of weapons or discharge of fire-arms, assaults, profane
or abusive language, noises, disturbances, cock-fighting,
malicious trespasses and injuries to person or property, dis-
orderly assemblages, disorderly conduct, and breaches of
the peace; and to suppress and restrain disorderly houses
and houses of ill fame, and prostitution.

"(7) To prevent, suppress and prohibit gaming, gam-
bling, cheats, frauds and fraudulent devices and practices of

every nature and description; and to authorize the destruction of all instruments and devices used for the purpose of gaming, gambling, cheating or defrauding.

"(8) To prohibit and abate public nuisances and to describe and define what shall be deemed to constitute such nuisances.

"(9) To make, enact, ordain, establish, publish and enforce, alter, modify, amend and repeal all such ordinances as shall be necessary, expedient, or convenient, to the exercise and carrying into effect of all the powers hereby conferred, and therein to declare and impose penalties or punishment, for the violation thereof, and to provide for the enforcement of the same against any person or persons who may violate any of the provisions of any such ordinance; and all such ordinances are hereby declared to be and have the force of law, provided that they be not repugnant to the constitution of the United States or of this state."

*Milwaukee County* was then and is now the only county in the state of Wisconsin having a population of 250,000 or more.

Under the authority of said statute, on the 2d day of May, 1922, the county board of said county of *Milwaukee* passed an ordinance entitled "An ordinance to suppress and restrain disorderly houses and abusive language, noises, disorderly conduct, disorderly assemblages and public nuisances in connection therewith," and which reads as follows:

"The county board of supervisors of *Milwaukee County* does ordain as follows:

"Section 1. The term 'roadhouses' as used in this act shall be construed to mean all the buildings and the premises used in connection with the sale of non-intoxicating beverages, as defined by subdivision (m) of section (1) of chapter 441 of the Laws of 1921, and for the sale of which beverages a license is now required under subdivision (a) of section 29 of chapter 441 of the Laws of 1921 of the state of Wisconsin.

"Section 2. It shall be unlawful for any one to keep open a roadhouse in Milwaukee county between the hours of 12 midnight and 6 o'clock in the morning, and between said

hours no patrons shall be permitted in or about said road-house, nor shall any form of amusement or entertainment be permitted or carried on in said roadhouse.

"Section 3. The provisions of this act shall not apply to any roadhouse conducted within the corporate limits of any duly incorporated city or village in *Milwaukee County*.

"Section 4. Any person violating any of the provisions of this act or any one aiding and assisting in the violation of any provision hereof shall for the first offense be fined, in addition to the costs of the action, not less than $25, nor more than $300 or in default of payment thereof, by imprisonment in the house of correction not more than three months, and for a second or subsequent offense shall be fined, in addition to the costs of the action, not less than $100 nor more than $500, or, in default of payment thereof, by imprisonment in the house of correction not less than one month nor more than six months.

"Section 5. This ordinance shall take effect upon passage and publication."

The action was brought to restrain the defendants from causing the arrest of the plaintiff and others similarly situated for the violation of said ordinance, and the appellant contends that ch. 321, Laws 1909, is unconstitutional for contravening the uniformity provision for town and county government, sec. 23, art. IV, Const.; that the county of *Milwaukee* had no authority or power under that statute to pass the ordinance in question; that the ordinance is unreasonable, discriminatory, and unconstitutional; and the title of the ordinance is wholly inconsistent with the subject.

For the appellant there was a brief by *Fawcett & Dutcher,* and oral argument by *George C. Dutcher* and *F. W. Beutler,* all of Milwaukee.

For the respondents there was a brief by *Winfred C. Zabel,* district attorney of Milwaukee county, and *Daniel W. Sullivan* and *William L. Tibbs,* assistant district attorneys, and oral argument by *Mr. Sullivan* and *Mr. Tibbs.*

The following opinion was filed November 8, 1922:

CROWNHART, J. The regulation of places where non-intoxicating liquors, as defined in ch. 441, Laws 1921, are sold is well within the police power of the state. That power may be delegated to counties provided the system of town and county government remains "as nearly uniform as practicable." Secs. 22, 23, art. IV, Const. Those sections read as follows:

"Section 22. The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."

"Section 23. The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

We are met at the threshold with the question as to whether the constitutional prohibition in sec. 23 is offended by ch. 321, Laws 1909, in so far as it attempts to confer upon counties having a population of 250,000 or more, alone, power to regulate such places. The tests laid down by the courts for determining the constitutionality of an act of the legislature are sufficiently enumerated in *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 189 N. W. 564, and we have no disposition to modify them as there stated. But as said by Mr. Chief Justice WINSLOW in *Borgnis v. Falk Co.* 147 Wis. 327, 349, 133 N. W. 209:

"Constitutional commands and prohibitions, either distinctly laid down in express words or necessarily implied from general words, must be obeyed, and implicitly obeyed, so long as they remain unamended or unrepealed."

Here we have in the constitution an express command and prohibition to establish but one system of town and county government, "which shall be as nearly uniform as practicable." Any other system is unconstitutional. It is

by this express command and prohibition that we must test the validity of the act of the legislature in its attempt to delegate authority to one county of the state to enact certain police legislation, and withholding such authority from every other county in the state. Is this giving to the counties of the state a system of government as uniform as practicable? To state the question in another way: Is it not entirely practicable to give all the counties of the state the same power that is attempted to be given to *Milwaukee County* alone?

We have examined these questions with care, and have searched in vain for any reason, practical or otherwise, for breaking the system of uniform county government in the delegation of such police powers. The need for such legislation in *Milwaukee County* may be greater than it is in other counties in the state, but the law is optional there, as it would be if applied to other counties. The need for legislation in one county of the state does not make it impracticable to vest the power in other counties of the state. The county board of supervisors is the judge of the necessity of the local legislation in *Milwaukee County,* and there is no reason apparent why the county boards of other counties should not be allowed to exercise the same judgment.

It is a matter of public knowledge that there are many licensed places under ch. 441, Laws 1921, in other counties of the state as well as in *Milwaukee County.* If the evils appertaining to such places are necessarily to be restrained in one county, they are likewise necessarily to be restrained in any other place where found. The reasons for applying restrictive measures are of the same kind, if not in the same degree, in every county in the state. As was said by Mr. Chief Justice SIEBECKER, speaking of the rent law, in *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 465, 183 N. W. 687:

"The evils resulting therefrom, and which this legislation seeks to remedy, were incident to the conditions wherever

they existed and were equally pernicious in their effects upon tenants everywhere. It is urged, however, that the legislative judgment in applying the law only to the class of landlords operating the business in thickly settled communities necessarily implies that the resultant evils were found to be a greater menace to the public welfare, health, and morals in such communities than in the sparsely settled districts of the state. But can it reasonably be said that such is the fact? Do the evils enumerated in the act in fact affect the public differently in counties having 250,000 population and over than in those having a lesser population? It is a matter of common knowledge that the oppressive exactions denounced by the act are as objectionable in their effects upon the public in the smaller cities of the state as in the larger ones and that the evil produced no different conditions in the county of *Milwaukee* than in other counties of the state. True, a larger number of persons were affected in *Milwaukee County* than in any other county, but this in no way caused a different economic, social, or political condition in this county than in any other county of the state where the evil existed. We find nothing in the conditions and characteristics affecting persons and property of landlords and tenants embraced in this act that distinguishes those in one county from those of any other county of the state in any respects germane to the purposes of this act."

The reasoning in that case is applicable to the instant case. To the same effect is the decision in *State ex rel. Melms v. Young,* 172 Wis. 197, 178 N. W. 481.

We conclude that ch. 321, Laws 1909, as applied to the facts in this case, is unconstitutional and void. This makes it unnecessary to consider the other questions raised.

*By the Court.*—The order is reversed, with directions to enter judgment granting the relief prayed for in the complaint.

A motion for a rehearing was denied, without costs, on May 1, 1923.