HJELMING, Appellant, vs. LA CROSSE COUNTY and others,
Respondents.

*December 8, 1925—January 12, 1926.*

*Counties: Constitutional law: Uniformity in government: Con-
ferring on certain counties power to restore banks of river:
Validity.*

.1. Sec. 66.12, Stats., authorizing a county containing a city of the
    third class to restore the banks of a river within the county
    in order to conserve the public health and safety, and per-
    mitting a city of that class to assume liability for the county's
    act, is void, being in violation of sec. 23, art. IV, Const., pro-
    viding that the legislature shall establish but one system of
    town and county government, which shall be as nearly uni-
    form as practicable, the statute conferring on counties having
    a city of the third class important powers of government
    which are denied to all other counties.   p. 584.
2. Where legislation on a given subject is required to be by gen-
    eral law, such requirement is complied with by proper classi-
    fication, the law relating to the subject being made applicable
    to all within the classes created.   p. 584.
3. Though, under the provisions of sec. 23, art. IV, Const., devia-
    tions from the established system of town and county gov-
    ernment are permitted, they must arise from circumstances
    rendering the established system impracticable under ·the
    peculiar circumstances compelling deviation, and therefore
    the generally accepted grounds upon which the legislature
    may classify subjects for general legislation are not sufficient
    when classifying counties under this section.   p. 585.

APPEAL from a judgment of the circuit court for La
Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed*.

This is an action in equity, brought by the plaintiff to
restrain the defendants from diverting the waters of the
Black river over his farm lands, and to recover damages
sustained by reason of such diversion.   It appears that
originally the waters of the Black river flowed in a south-
westerly, direction towards the Mississippi river, to a point
about three miles therefrom, and about eight or ten miles
above the *City of La Crosse*.   The main channel of the

river there turned in a southeasterly direction, flowing some-. what parallel to the Mississippi river, until it finally entered such river within the municipal boundaries of the *City of La Crosse.* Its southeasterly course, as above described, ran through a very flat and marshy country. Many years ago it commenced to cut channels through to the Mississippi river at and somewhat below the point where its course turned to the southeast, thereby reducing the volume of water which formerly flowed through the *City of La Crosse.* For a time logging companies maintained dams and obstructions preventing the water from entering these cut-offs and compelling it to follow the original course of the river down to the *City of La Crosse.* With the cessation of logging operations such improvements went to decay, and the waters of the river persisted in finding their way to the Mississippi river through these cut-offs or channels to such an extent that for many years practically no water has flowed down the original channel to the *City of La Crosse.*

Plaintiff owns lands about five miles above the *City of La Crosse* through which this main channel originally flowed. Owing to the cut-offs which the river itself had made above his farm, his lands have been practically dry and free from seepage or moisture coming from the Black river for a number of years. By obstructing the cut-offs and channels above his lands the defendants restored such a flow of water into the main channel of the Black river as to render his lands wet and unfit for agricultural purposes, to which they have been devoted for many years prior to the commencement of this action.

The case was tried by the court. Findings of fact and conclusions of law were made, and judgment was rendered thereon in favor of the defendants and against the plaintiff. From the judgment so rendered plaintiff appeals.

For the appellant there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *George W. Bunge.*

For the respondents there was a brief by *O. J. Swennes,* city attorney of the *City of La Crosse,* and *L. J. Brody,* district attorney of *La Crosse County,* and oral argument by *Mr. Swennes.*

OWEN, J.   The improvements of which plaintiff complains were made by the *County of La Crosse* upon an undertaking by the *City of La Crosse* to save harmless the *County of La Crosse* from all damages which said county may be required to pay to any person on account of the making of said improvements under and pursuant to the provisions of sec. 66.12 of the Statutes.   That section reads as follows:

"(1) Any county containing a city of the third class may provide for the improvement of the water supply in any river within such county, for the purpose of preservation and protection of the health and safety of the residents of such county, by replacing and restoring the banks of such river and the confinement of the waters of such river to its channel by means of closing all passages from such river, including chutes and sloughs, through which the waters of such river flow, and by such other means as the board of supervisors of such county may deem necessary and proper.

"(2) The city council of any city of the third class within such county may by ordinance assume on behalf of said city all liability on account of any and all claims, demands, actions and causes of action of every nature arising from injury to private property on account of flowage, inundation or seepage due to such improvement, and such city council may appropriate such moneys as are necessary to pay, litigate or defend against all such claims."

Although not suggested or argued by counsel, the constitutionality of this statute immediately challenges our attention.   It confers upon counties containing a city of the third class certain powers and governmental functions not conferred upon other counties.   Sec. 23, art. IV, of the constitution provides that "The legislature shall establish but one system of town and county government, which shall

be as nearly uniform as practicable." That the power conferred by this statute upon a very limited and special class of counties is germane to the system of county government provided for such counties, is plain. Any system of government, whether it be county, city, or state, must include not only the machinery of, but the powers to be exercised by, the government established. This statute confers upon counties having within their borders a city of the third class very important powers of government which are denied to all other counties. The power conferred by this statute is as much a part of the system of county government as is the power to build viaducts or bridges, which this court has consistently held to constitute a part of county government. *State ex rel. Johnson v. County Boards,* 167 Wis. 417, 167 N. W. 822; *State ex rel. Merrimac v. Hazelwood,* 158 Wis. 405, 149 N. W. 141; *State ex rel. La Valle v. Supervisors,* 62 Wis. 376, 22 N. W. 572; *Wagner v. Milwaukee County,* 112 Wis. 601, 88 N. W. 577.

Where legislation upon a given subject is required to be by general law, such requirement is complied with by proper classification and the law relating to the subject being made applicable to all within the classes created. The constitutional provision as to county uniformity, however, requires that there shall be but one system of town and county government, and that system shall be as nearly uniform as practicable. Deviations from the established system are permitted, but such deviations must arise from circumstances rendering the established system impracticable under the peculiar circumstances compelling the deviation.

In *State ex rel. Melms v. Young,* 172 Wis. 197 (178 N. W. 481), at p. 202 it was said:

"The significant thing is that a general law applicable to a *class of counties* providing for a departure from uniformity in county government must rest on facts and existing conditions showing that it is not practicable to carry on the county government in such particular class in the

manner that the statute provides for carrying on the county governments in counties generally throughout the state. It follows from this that the generally accepted grounds upon which a legislature may classify subjects for general legislation are not sufficient when it attempts to classify counties within the field relating to the system of county government under the mandate of sec. 23, art. IV. The terms of this constitutional provision expressly inhibit departure from the established uniform system of county government unless it is manifest that it is not practicable to carry on such uniform system of government in a designated class of counties."

The classification here attempted is most unreasonable. It is based upon the fact that counties have within their borders cities of the third class. It authorizes such counties to make certain improvements in rivers for the purpose of promoting the public health. Why should counties having within their borders cities of the third class enjoy such powers while the same are denied to all other counties of the state? What is there about cities of the third class, as distinguished from cities of all other classes, which gives rise to problems concerning the public health which may not arise by reason of the presence of cities of any or all other classes? The classification is purely arbitrary, and very strongly suggests that the law was passed for the purpose of meeting a particular situation. We do not think the Reports of this court reveal a more flagrant disregard of the constitutional provision we are considering. Its offense against such constitutional provision is much plainer than were the laws considered in *Kroeplin v. County of Milwaukee*, 180 Wis. 424, 190 N. W. 454, or in *State ex rel. Melms v. Young*, 172 Wis. 197, 178 N. W. 481, which were both held void as contravening the constitutional requirement for uniformity of county government. It is unnecessary to refer at length to the many decisions of this court sustaining this conclusion. An extensive review thereof will be found in *State ex rel. Busacker v. Groth*,

132 Wis. 283, 112 N. W. 431. While many laws introducing a departure from the general system of county government have been sustained, none of them presented such palpable disregard of the constitutional requirement as the law here under consideration.

This conclusion effectually disposes of the case, and it becomes unnecessary to discuss the many interesting questions so ably briefed by counsel on both sides of the case. It follows that the act of the county in diverting the waters of Black river over plaintiff's lands is unauthorized, and that the plaintiff is entitled to the relief prayed for.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.