BINGHAM, Appellant, vs. BOARD OF SUPERVISORS OF MIL-
WAUKEE COUNTY and others, Respondents.

*February 5—February 23, 1906.*

*Constitutional law: Statutes: Special or private law: Classification by
counties: Bonds: Tax levy: Requisites: Formalities: Collection:
Treasurer's bond: Failure to file: Mandatory and directory pro-
visions.*

1. Under constitutional limitations classification must be based on
   substantial and real differences in the classes, which are ger-
   mane to the purpose of the law and reasonably suggest the pro-
   priety of substantially different legislation, the legislation must
   apply to each member of the class, and the classification must
   not be based on existing circumstances only, but must be so
   framed as to include in the class additional members as fast as
   they acquire the characteristics of the class.

2. Ch. 444, Laws of 1903, entitled "An act to authorize the building
   and construction of viaducts across valleys, gullies, running
   streams, or railroad tracks by counties in this state of a popu-
   lation of 150,000 or more and for the issuing of county bonds
   therefor," is not a special or private law within the prohibition
   of sec. 31, art. IV, Const.

3. Under ch. 444, Laws of 1903, the classification of counties by pop-
   ulation is not based on existing facts only, but is so framed as
   to admit additional members, is based on substantial and real
   differences germane to the subject covered by the law, and the
   characteristics of the class suggest the propriety of the law as
   applicable to the class, while refusing it to other counties not
   in the class.

4. In an action to restrain the issue of bonds of Milwaukee county,
   proposed to be negotiated under the provisions of ch. 444, Laws
   of 1903, it appeared, among other things, that in attempted com-
   pliance with sec. 3, art. XI, Const., and said statute, the county
   board, at the same time that it passed the resolution directing
   the issuance of the bonds, also passed a resolution providing
   that to meet the principal and interest thereof "there is hereby
   levied on all the taxable property of the county in each of the
   twenty years 1905 to 1924, inclusive, a tax" of one twentieth of
   the face of the bonds, and also in each of said years the amount
   of the necessary interest levy. *Held,* that the action taken was
   correct and the only action that would satisfy the constitutional
   and statutory requirements, and was not open to the objec-
   tions that the board had no authority to levy a tax for any year

beyond the then current year, or that some taxes might become delinquent and not paid until after sale, and consequently the entire amount might not be on hand at the time the annual instalments fell due.

5. Ch. 444, Laws of 1903, provides that the county treasurer, before he shall receive the bonds issued under its authority or any money derived from the sale thereof, shall execute an additional bond in a specified sum within thirty days after it has been determined to issue such bonds. The county board by resolution of May 9th determined to issue such bonds, and on July 1st, following, the county treasurer filed his bond, which was approved August 8th, but was subsequently discovered to omit some conditions required by the statute, and in September following, and before receiving any bonds or money, he filed a new bond, containing all the necessary conditions, which was duly approved. *Held,* that the requirement of the statute as to the exact time when the bond should be filed was directory only, at least so long as it was filed before the treasurer's duties began, and that failure in this respect to strictly comply with the statute furnished no ground to enjoin the issue of the bonds.

6. Ch. 444, Laws of 1903, provides that bonds under the act shall be of three several denominations, "the number of bonds of such denominations to be fixed by the county board." *Held,* that such statute is mandatory to the extent that no bond can lawfully be issued unless it be of one of the denominations prescribed, but does not require that all three of the denominations shall be issued.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

*Edward T. Fairchild,* for the appellant.

For the respondents there was a brief signed by *Turner, Hunter, Pease & Turner,* of counsel; by *Francis E. McGovern,* attorney for the *County Board of Supervisors, Frank J. Lenicheck,* chairman, *George Thuering* and *Frank O. Phelps,* county treasurers; and by *Chester B. Masslich* and *Eugene Dupee,* attorneys for *E. H. Rollins & Sons, John Farson, Arthur B. Leach, Ferry W. Leach,* and *James G. Campbell.* There was also a supplemental brief and oral argument by *W. J. Turner,* of counsel.

WINSLOW, J.    This is an action in equity brought by a tax-payer of Milwaukee county to enjoin the issuance and sale of negotiable county bonds amounting to $450,000 for the purpose of building a viaduct across the Menominee valley, connecting Grand avenue on the east side of said valley with Grand avenue extended on the west side thereof.    Certain corporations and firms which had contracted to purchase said bonds were made defendants, together with the county officers. The bonds were about to be issued under the provisions of ch. 444, Laws of 1903.    The defendants answered jointly, and, the plaintiff having demurred generally to the answer, the demurrer was overruled as a demurrer to the answer, but sustained as a demurrer to the complaint, and the plaintiff appeals.

The first and most important contention made by the appellant is that said ch. 444 is a special or private law, and hence is unconstitutional under the provisions of sec. 31, art. IV, Const., which prohibits the enactment of special or private laws for various purposes, including the laying out of highways, assessment or collection of taxes, and for the granting of corporate powers or privileges.    The law thus attacked is entitled:

"An act to authorize the building and construction of viaducts across valleys, gullies, running streams or railroad tracks by counties in this state of a population of 150,000 or more and for the issuing of county bonds therefor."

The first section provides that:

"The county board of supervisors of any county within this state which now has or may hereafter have according to any state or national census taken a population of 150,000 or more, is hereby authorized and empowered to erect, construct and maintain any viaduct or bridge over and across any gully, river or valley, or railroad track or tracks agreeable to the conditions and provisions of this act and subsisting laws applicable thereto, when in the opinion of such county board the erection of such viaduct or bridge shall be for the best inter-

ests of the county and inhabitants thereof, which opinion shall be rendered by resolution duly adopted by the county board of supervisors of such county, at any legal meeting thereof. Such viaduct or bridge shall be constructed of such length, width and height as the said county board of supervisors may by resolution determine."

The remaining sections of the act contain detailed provisions governing the manner in which the work shall be done, the contracts let, and the bonds issued, as well as provisions for the levying of taxes to pay the principal and interest of the bonds.

The county of Milwaukee is the only county in the state having a population of 150,000, and the claim is that this law is evidently a law passed solely for Milwaukee county, and is consequently a special or private law and not a general one. The ultimate and controlling question is whether classification of counties by population is a proper classification as relating to legislation concerning the building of public improvements. If it be proper classification, then the law is a general one, notwithstanding the fact that there is now but one member of the class. If not, then the law must be held special. *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869. The general rules governing classification have been frequently stated, and may be said to be briefly as follows: The classification must be based on substantial and real differences in the classes, which are germane to the purpose of the law and reasonably suggest the propriety of substantially different legislation, the legislation must apply to each member of the class, and the classification must not be based on existing circumstances only, but must be so framed as to include in the class additional members as fast as they acquire the characteristics of the class. *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954, and cases cited on page 53 (98 N. W. 957). Applying these general rules to the law here attacked, it is at once seen that the classification is not based on existing facts.

only, but is so framed as to admit additional members, so that there is but one question, and that is whether the classification is based upon a substantial and real difference which is germane to the purpose of the law, and suggests the propriety of such a law to govern a county of 150,000 inhabitants while denying it to counties with lesser population. A marked and substantial difference in population is, of course, a real difference, but does it suggest the propriety of greater powers in the matter of the construction of such public improvements than the ordinary powers possessed by smaller counties? If this question related to cities instead of counties, then there would seem to be no doubt that it should be answered in the affirmative. That large and populous cities need better, safer, and more expensive highways and bridges for the accommodation of their teeming populations than small communities no one will deny. The simple rural highway and the inexpensive bridge may be ample for all purposes in the village or small city, while for the congested conditions of the great city the asphalt pavement and the broad and expensive bascule bridge may be not only proper, but absolutely essential to human safety. Classification of cities by population, and the enactment of general laws for each class according to its needs, has been so often approved by this court that it has become part of the fundamental law of the state. *State ex rel. Risch v. Trustees, supra.* No good reason is perceived why the same considerations, in a somewhat modified degree perhaps, do not justify classification of counties by population as well as cities. Indeed, this court has affirmed the validity of an act providing for the payment of a salary to registers of deeds in lieu of fees in all counties containing a population of 150,000 or upwards, on the ground that the classification was proper, and hence that the act was a general act and not private or local. *Verges v. Milwaukee Co.* 116 Wis. 191, 93 N. W. 44. While the subject of classification was not discussed at length in this case, it is manifest that it could not have been

decided as it was except on the basis that the classification of
counties by population in legislation relating to the payment
of a salary in lieu of fees to the register of deeds was proper
because germane to the subject; the idea doubtless being that
in a populous county where many real-estate transfers are
made, the fees provided by law would furnish an extravagant
compensation to the register, while in small counties where
the transfers are few in number the fee system would afford
simply a' reasonable compensation. So this court sustained
the validity of a law granting to town boards of supervisors
all the powers of village boards (with certain exceptions)
where the town contained an unincorporated village contain-
ing not less than 1,000 inhabitants, and held it to be a general'
act. *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482.
This decision could evidently only have been reached on the
basis that classification of country towns by population was
proper. Indeed, the language of the opinion on page 302
(40 N. W. 485) shows this to have been the basis, although
the word "classification" is not used.

But, apart from these decisions, it seems apparent that a
county of more than 150,000 population is quite certain to
contain densely populated areas requiring means of intercom-
munication by way of highways and bridges far more elab-
orate and expensive than those which will fully satisfy the
modest needs of a sparsely settled county, devoted principally
to farming and containing only a few villages of small popula-
tion. So we reach, without serious difficulty, the conclusion
that the classification of counties by population in the law be-
fore us is germane to the subject covered by the law, and that
the characteristics of the class suggest the propriety of such a
law as applicable to the class, while refusing it to other coun-
ties not in the class.

A number of minor objections are made which will be
briefly noticed. Our constitution (sec. 3, art. XI) provides
that any municipality incurring an indebtedness "shall, be-

·fore or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years' from the time of contracting the same." Sec. 10 of the act in question also provides as follows:

"It shall be the duty of any county board of supervisors ·which shall have determined upon the building of any viaduct under the provisions of this act, at or before issuing any bonds ·in pursuance hereof, to provide for the payment of the in-·terest and the ultimate payment of the principal, of any and all bonds which shall be issued under and by virtue of this ·act; and for that purpose such county board of supervisors is hereby authorized and required at or before the issue of any ·such bonds shall have been determined upon, to provide for the assessment, levy and collection of a direct annual tax upon all the taxable property of such county in which such viaduct shall be located, sufficient to pay the interest on such bonds so issued, and also to provide for the levy and assessment of a di-·rect tax, sufficient to pay and discharge the principal of said bonds, as the same shall mature and to collect the same in the manner as other taxes are levied and collected by law."

In attempted compliance with these constitutional and stat-·utory requirements, the county board of Milwaukee county, at ·the same time that it passed the resolution directing the issu-ance of the bonds, also passed a resolution providing that to ·meet the principal and interest thereof "there is hereby levied ·on all the taxable property of the county in each of the twenty years 1905 to 1924, inclusive, a tax in the sum of $22,500 for . the payment of the principal of said bonds," also in each of said years the amount set opposite each year, respectively, for the payment of interest (the amount of the interest levy for ·each year being specified). It is said that the board had no authority to levy a tax for any year beyond the current year, and hence that the attempted levy for future years is invalid, and the constitutional requirement has not been met. This contention logically means that no municipal debt can be in-·curred without levying a tax to pay the entire principal and

interest during the current year, a result which is as absurd
as it is plainly contrary to the plain import of the constitu-
tional provision. So far as ordinary tax levies are concerned,
the county board cannot make tax levies for future years, but
it was just this difficulty which the constitutional provision
named was framed to meet and correct, as fully explained in
the case of *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637.
In that case it was held that neither the constitutional pro-
vision aforesaid nor a statutory provision identical in terms
with sec. 10 was satisfied by the mere passage of a resolution
providing that there "shall be annually levied by the county
board" sufficient sums to meet the principal and interest of
the bonds as they fall due, for the reason that such a resolu-
tion was not an exercise of the county board's legislative power
to levy a tax, but a mere promise, or command to future
boards to do so. We have no disposition to review or change
the rule announced in that case. Following that rule, it is
evident that the action taken in the present case was correct,
and indeed the only action which would satisfy the constitu-
tional and statutory requirements. The objection that some
of the taxes might become delinquent and not be paid until
after sale, and hence that the entire amount might not be in
hand at the time when the annual instalments fall due, is not
deemed of sufficient dignity to require treatment. The levies
provided for, if collected when due in regular course, will
meet all instalments of principal and interest as they become
due. This must be held to be a sufficient provision.

The law in question requires the county treasurer to exe-
cute an additional bond with sureties, in double the amount
of the proposed bond issue, within thirty days after it has
been determined to issue such bonds, and before he shall re-
ceive the bonds or any money derived from the sale thereof.
It appears that the county treasurer filed a bond July 1, 1905,
which was approved by the county board August 8, 1905, but
was subsequently discovered not to contain all the conditions

required by the statute, and in September following, and before receiving any bonds or money, filed a new bond containing all the necessary conditions, which was duly approved by the county board. It is claimed that the proposed bond issue must be enjoined because of failure to file the bond within the required time. This contention must fail. The purpose of the bond is simply to indemnify the county against loss resulting from the failure of the treasurer to perform his duty. The requirement as to the exact time when it shall be filed is plainly directory only, at least so long as it is filed before the treasurer's duties begin. Neither the treasurer nor his sureties could be heard to say that it was void because not given within the prescribed thirty days. Murfree, Official Bonds, §§ 321, 583.

The law provides that the bonds issued under this act shall be "in the sum of one thousand dollars, five hundred dollars, and one hundred dollars each, the number of bonds of such denomination to be fixed by the county board of supervisors." The resolution of the county board provided for the issuance of $1,000 and $500 bonds, but not for the issuance of any $100 bonds, and it is claimed that the bond issue is illegal and should be restrained, because the law is mandatory and requires that all denominations *shall* be issued. The law is doubtless mandatory to the extent that no bond can be lawfully issued under it unless such bond be of one of the denominations prescribed; but should its mandatory character be construed as extending any further? We think not. If it had been intended to require that all three denominations should be issued, with the idea perhaps that small investors should have an opportunity to subscribe as well as large ones, it would seem that the legislature would certainly have guarded the provisions by fixing at least a minimum proportional amount of the smaller bonds which must be issued. Instead of any such provisions, however, the legislature expressly authorized the county board to fix the "number of

bonds of such denominations". to be issued, thus making it possible for the board to issue all three denominations and yet issue but one bond of $100.    Thus the letter of the law would be fully complied with, but its spirit (on the basis that it is mandatory) would be set at naught.    Again, the provision last quoted says that the county board shall fix the number of bonds of "such denomination," not of "each" denomination.  The word "such" must have been used advisedly, and must, it seems, refer to such denomination as the board shall determine to issue, otherwise it would seem to have no appropriate place in the sentence.    These considerations lead us to the conclusion that the law does not require that all the denominations shall be issued in a given bond issue.

Some minor objections are made which do not seem well taken or worthy of special treatment.

*By the Court.*—Order affirmed.