STATE EX REL. THOMSON, Attorney General, Petitioner, vs. GIESSEL, Director of Department of Budget and Accounts, Respondent. [Forest Crop Case.]

*October 9—November 3, 1953.*

208

For the petitioner there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there was a brief and oral argument by *W. Roy Kopp* of Platteville, special counsel.

A brief was filed by *Charles F. Smith* of Wausau, and *W. J. P. Aberg* of Madison, as *amici curiae.*

BROADFOOT, J.    Sec. 10, art. VIII of the Wisconsin constitution provides in part as follows:

"The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works. . . . Provided, that the state may appropriate moneys for the purpose of acquiring, preserving, and developing the forests of the state; but there shall not be appropriated under the authority of this section in any one year an amount to exceed two tenths of one mill of the taxable property of the state as determined by the last preceding state assessment."

The portion thereof referring to appropriations for the purpose of acquiring, preserving, and developing the forests of the state was added by an amendment adopted in 1924. Since the year 1939, under the provisions of sec. 70.58,

Stats., there has been levied and collected an annual tax of two tenths of one mill "for the purpose of acquiring, preserving, and developing the forests of the state, the proceeds of such tax to be paid into the conservation fund." In addition, the legislature has appropriated out of the general fund varying amounts for payment to the towns in accordance with sec. 77.05 (2). This section provides for the payment of 10 cents per acre, but also provides that if the appropriation is insufficient the payments shall be proportionately reduced. In 1952 the full amount of 10 cents per acre was paid. In other years the amount was reduced, and the lowest payment was in the year 1940, when it amounted to five and two-tenths cents per acre. From 1942 on there has also been a separate appropriation by sec. 20.07 (2) (c) for payment of the expenses of administration of ch. 77, Stats. This appropriation is not before us and is not being passed upon.

The voucher in question involves only lands entered under ch. 77, Stats. Payments to counties for forestry purposes are treated in separate sections of the statutes and payments therefor to counties are made from the conservation fund, which includes the amounts raised by the levying of the tax of two tenths of one mill.

The respondent contends that the payment of the acreage contributions provided for by sec. 77.05 (2), Stats., from the general fund would be unconstitutional since in excess of the over-all limitation of sec. 10, art. VIII of the constitution. First, because the acreage contributions by the state out of the general fund are part of a complete program provided for by ch. 77, Stats., and they contribute, as truly as the reduced tax payment by the landowner, to the general purpose of acquiring, preserving, and developing the forests of the state. Second, because the payments are not a state aid for the reason that there is a provision for repayment in case the landowner withdraws his property and a severance

tax is provided under which the state is repaid its advances, whereas state aids are usually in the form of outright grants.

On the authority of statements made in bulletins issued by the Wisconsin conservation commission, the United States department of agriculture, and the University of Wisconsin, it is contended that the plan of taxation adopted for forest crop lands provides for tax reform rather than tax relief, and that the whole purpose of the acreage contribution by the state is therefore a part of this tax-reform procedure and is for the purpose of acquiring, preserving, and developing the forests of the state.

It is further contended by the respondent that these acreage contributions, standing alone, would be unconstitutional since not for a public or state purpose, which also shows that they are a part of the general forestry program and are therefore subject to the constitutional limitation on the amount that can be appropriated by the legislature in one year for forestry purposes.

In passing upon the merits of these contentions some general rules of taxation must be kept in mind, for the power of the legislature to appropriate public funds is coextensive with the power to tax. The legislature has plenary power over the whole subject of taxation. It may select the objects therefor, determine the amount of taxes to be raised, the purposes to which they will be devoted, and the manner in which property shall be valued for taxation. It may exempt property from taxation and limit the exercise of the taxing power of municipal corporations. These rules are subject only to constitutional restrictions and limitations. One of these is that the tax and appropriation must be for a public purpose.

With these rules in mind the solution of the case before us depends upon the answers to two questions: First, is the appropriation subject to any constitutional restriction or limitation? Second, is the appropriation for a public purpose?

Our attention has been called only to the limitation of sec. 10, art. VIII of the constitution. We can find no further restriction or limitation that could apply. It is true that the appropriation authorizes payments based upon the amount and location of lands entered pursuant to ch. 77, Stats. The fact that provision is made in ch. 77 is not controlling. Attention is called to county-owned forestry lands. There, too, the legislature provides an acreage contribution. That contribution is provided for in ch. 28, Stats., and the legislature states expressly that the payments are to be used exclusively for "the purchase, development, preservation, and maintenance of a county forest reserve." The payments to counties are made out of the conservation fund from the proceeds of the two tenths of one mill tax and the conservation commission, through an audit, makes sure that the said payments are expended and used by the counties solely for the purposes provided by statutes. The payments in question are made to towns, which pay 40 per cent thereof to school districts, 20 per cent to counties, and the towns retain 40 per cent for their own use. There is no provision in the statutes that these funds be used for forestry purposes or for any other particular purpose, and in fact, the amounts thereof go into the respective treasuries and are used as other tax funds are used for purposes determined by the governing bodies.

Having deprived the local units of a portion of their tax base that would otherwise be available for the imposition of general taxes, the legislature has granted an aid to make up, in part at least, such loss of revenue. The fact that the state will recover some part at least of the annual appropriations does not change the nature or validity of the aid. Nor would the fact, if it be a fact, that the appropriations are part of a plan of tax reform rather than tax relief affect the validity of the appropriations. Although the appropriations are related to the Forest Crop Law, they are not an integral part thereof. The landowner is induced to enter his lands under

the Forest Crop Law because of the limitation upon the taxation thereof provided by the legislature. Acreage payments to the towns in which his lands are located cannot in any way affect his taxes on his forest crop lands.

The matter is one of legislative discretion. The legislature may increase, diminish, or abolish the appropriations without affecting in any way the landowner's tax burden, so far as his forest crop lands are concerned. Thus, the first question must be answered in the negative.

The general rule as to the public purpose of the expenditure of public funds is stated in 81 C. J. S., States, p. 1149, sec. 133, as follows:

"Generally, in connection with the validity of the expenditure of state funds, what is . . . a public purpose, is a question for the legislature to decide, with respect to which it is vested with a large discretion, which cannot be controlled by the courts unless its action is clearly evasive. . . . Where a doubt exists whether the purpose of an appropriation is public or private, it will be resolved in favor of the validity of the appropriation, . . ."

That rule has been followed in Wisconsin. In the case of *Brodhead v. Milwaukee,* 19 Wis. *624, this court said:

"To justify a court in declaring a tax void, and arresting proceedings for its collection, the absence of all possible public interest in the purposes for which the funds are raised must be so clear and palpable as to be immediately perceptible to every mind. Claims founded in equity and justice, in the largest sense of those terms, or in gratitude or charity, will support a tax." (Headnotes 3 and 4.)

This rule was cited with approval in the case of *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067. A cyclone struck the city of New Richmond in 1899, killing more than 100 people, injuring about 500 more, destroying the entire business district, including the water-works tower, tank, and pumping station, and its

electric-light plant, and the city incurred large expense in caring for the injured, clearing up the debris to prevent disease, and in the relief and aid of the homeless and destitute. Afterward it borrowed funds from the state out of its trust funds. The legislature then made an appropriation from the general fund to the trust fund for the purpose of relieving the city of its indebtedness to the state. This was held to be for a public purpose.

In the case of *State ex rel. Wisconsin Development Authority v. Dammann,* 228 Wis. 147, 178, 277 N. W. 278, 280 N. W. 698, this court cited with approval the following quotation from *Carmichael v. Southern Coal & Coke Co.* 301 U. S. 495, 514, 57 Sup. Ct. 868, 81 L. Ed. 1245:

"This court has long and consistently recognized that the public purposes of a state, for which it may raise funds by taxation, embrace expenditures for its general welfare. [Citations.] The existence of *local conditions* which, because of their nature and extent, are of concern to the public as a whole, *the modes of advancing the public interest* by correcting them or avoiding their consequences, *are peculiarly within the knowledge of the legislature,* and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods. [Citations.] As with expenditures for the general welfare of the United States [Citations], *whether the present expenditure serves a public purpose is a practical question addressed to the lawmaking department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court.* [Citations.]"

Thus, as in the case of taxation, the question of whether an expenditure of public funds constitutes a public purpose is largely within the discretion of the legislature. The courts cannot interfere with the legislative determination upon either subject unless there is a very clear abuse of discretion. Thus, the second question must be answered in the affirmative.

The appropriation has been made, the taxes have been levied and collected for this purpose, and the respondent must audit and approve the payment.

The decision in this case was announced on the 22d day of October, 1953, because of the resumed session of the state legislature. The decision was based upon the reasons stated in the foregoing opinion, and was as follows:

*"By the Court.*—Let a peremptory writ of mandamus issue under the seal of this court directing the respondent to approve and certify for payment voucher number 21,209 submitted by the state conservation commission of Wisconsin on June 11, 1953, as prayed for in the petition."