STATE EX REL. MILWAUKEE COUNTY, Petitioner, v. Boos, County Auditor, Respondent.

*October 5—November 3, 1959.*

For the petitioner there were briefs by *C. Stanley Perry,* corporation counsel, and *George E. Rice* and *John R. Devitt,* assistant corporation counsel, and oral argument by *Mr. Perry.*

For the petitioner, pursuant to sec. 269.56 (11), Stats., there was oral argument by *Roy G. Tulane,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief and oral argument by *William J. O'Connor* of Milwaukee.

DIETERICH, J.   Milwaukee county has a population in excess of 1,000,000 people residing in 246 square miles, a population density of 4,036 to the square mile, with about 26.1 per cent of the state's population in 1957. The next-largest county is Dane with 205,000. Milwaukee county is industrial in character. It no longer has any town governments. Its 1959 expenditure budget was $80,279,000. It has a county board of 24 members elected by assembly districts instead of by towns, villages, and cities as in other counties. As of June 20, 1957, it had 5,484 county officers and employees. County Government and the Problems of Urban Expansion, Bureau of Government, University of Wisconsin, March 2, 1959, pp. ix to xii, pp. 1 to 12.

This court has had before it on many occasions the interpretation of sec. 23, art. IV of the Wisconsin constitution.

Sec. 23, art. IV of the Wisconsin constitution provides:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

The 1959 legislature enacted ch. 327 entitled "County Executive—Populous Counties," which provides as follows:

"59.031 COUNTY EXECUTIVE IN POPULOUS COUNTIES. (1) *Election and term of office.* In each county having a population of 500,000 or more, a county executive shall be elected for a term of four years at the election to be held on the first Tuesday in April of each year in which county supervisors are elected, and he shall take office on the first Monday in May following his election. The county executive shall be elected from residents of the county at large by a majority vote of all qualified electors in the county voting in the election. The first election under this section in a county presently (1959) having a population of 500,000 or more shall be held on the first Tuesday in April, 1960. In any county which hereafter attains such population, such first election shall be held on the first Tuesday in April in the year following the official announcement of the federal census.

"(2) *Duties and powers.* The duties and powers of the county executive shall be, without restriction because of enumeration, to:

"(a) Co-ordinate and direct by executive order or otherwise all administrative and management functions of the county government not otherwise vested by law in boards or commissions, or in other elected officers.

"(b) Appoint the heads of all departments in the classified service of the county except where the statutes provide that the appointment shall be made by a board or commission or by other elected officers; but he shall, subsequent to the effective date of this section (1959), also appoint all department heads where the law provides that the appointment shall be made by the chairman of the county board or by the county board. Such appointments shall not require the confirmation of the county board. The county executive may file charges for the removal, discharge, or suspension of any persons so appointed.

"(c) Appoint the members of all boards and commissions where such appointments are required after the effective date of this section (1959) and where the statutes provide that such appointment shall be made by the county board or

the chairman of the county board. All appointments to boards and commissions by the county executive shall be subject to the confirmation of the county board.

"(3) *Administrative secretary to county executive; staff.* The county executive may appoint an administrative secretary who shall be exempt from county civil service and such additional staff assistants as the county board may provide pursuant to secs. 16.31 to 16.44.

"(4) *Compensation of county executive, deputy, and staff assistants.* The county board shall fix the compensation of the county executive, his administrative secretary, and his staff assistants, provided that the salary of the county executive shall be established at least ninety days prior to any election held to fill the office and may not be increased during his term of office nor decreased during such term without his consent.

"(5) *Message to the county board; submission of annual budget.* The county executive shall annually and otherwise as may be necessary, communicate to the county board of supervisors the condition of the county, and shall recommend such matters to them for their consideration as he may deem expedient. Notwithstanding any other provision of the law, he shall be responsible for the submission of the annual budget to the county board and may exercise the power to veto any increases or decreases in the budget under sub. (6).

"(6) *County executive to approve or veto resolutions or ordinances; proceedings on veto.* Every resolution or ordinance passed by the county board shall, before it becomes effective, be presented to the county executive. If he approves, he shall sign it; if not, he shall return it with his objections, which objections shall be entered at large upon the journal and the board shall proceed to reconsider the matter. Appropriations may be approved in whole or in part by the county executive and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for in other resolutions or ordinances. If, after such reconsideration, two thirds of the members-elect of the county board agree to pass the resolution or ordinance or the part of the resolution or ordinance objected to, it shall become effective on the date prescribed

but not earlier than the date of passage following reconsideration. In all such cases, the votes of the members of the county board shall be determined by ayes and nays and the names of the members voting for or against the resolution or ordinance or the part thereof objected to shall be entered on the journal. If any resolution or ordinance is not returned by the county executive to the county board at its first meeting occurring not less than six days, Sundays excepted, after it has been presented to him, it shall become effective unless the county board has recessed or adjourned for a period in excess of sixty days, in which case it shall not be effective without his approval.

"(7) *Removal from office; vacancy, how filled.* The county executive may be removed from office by the governor for cause pursuant to sec. 17.16. A vacancy in the office of county executive shall be filled by appointment by the chairman of the county board, subject to confirmation by the county board, from among electors of the county in the same manner as vacancies in the office of county supervisor are filled under sec. 17.21 (5)."

At the time of the adoption of the constitution there were in operation several different systems of county government. Most notably the "supervisor" type and the "commission" type. The enactment of sec. 23, art. IV, Const., was obviously intended to eliminate the defects and controversies inherent in a situation where multiple systems of county government existed side by side, each required to carry out the same powers delegated to it by the legislature.

The legislature, pursuant to the mandate of the constitution, established a county governmental system under which system all powers, duties, and functions of government were reposed in a board of supervisors in each county.

Sec. 59.02, Stats., provides:

"(1) The powers of a county as a body corporate can only be exercised by the board thereof, or in pursuance of a resolution or ordinance adopted by it.

"(2) Ordinances and resolutions may be adopted by a majority vote of a quorum or by such larger vote as may be required by law. . . .

"(3) A majority of the supervisors entitled to a seat on the board shall constitute a quorum. All questions shall be determined by a majority of the supervisors present unless otherwise provided."

It may serve some useful purpose at this time to summarize the position this court has taken on matters involving sec. 23, art. IV of the Wisconsin constitution, as applied to county government. This position encompasses two distinct aspects. First: One system of county government shall be established. Second: The systems adopted by the legislature shall be as nearly uniform as practicable. While there may be variation in carrying out the specific duties in county government, there can be no variation in the system itself. This court realizes the practicable problem which confronts Milwaukee county having a population in excess of 1,000,000 with an annual budget of $80,279,000 and, in addition, an efficient system of county government, and we do not hesitate to find that the application of sec. 59.031, Stats., to a class of counties having a population of 500,000, of which Milwaukee county is presently the only member, does not violate the "uniform as practicable" tests. We do find that sec. 59.031 as presently enacted does violate the "one system" test.

Under sec. 59.031 (2) (b), Stats., the county executive has broad powers of appointment entirely beyond control of the board of supervisors.

Under sec. 59.031 (5) and (6), Stats., the county executive has broad veto powers over resolutions, ordinances, and budget.

This court is not unmindful of the practicable problems existing in the carrying out of government functions in

counties varying in size and character, *i.e.,* urban, rural, semirural, and semiurban.

However, the changes referred to can only be in the particulars of county government and not in the substantive character or nature of county government. Thus, a statute allowing counties to exercise an option to adopt a commission form of government was held unconstitutional in *State ex rel. Adams v. Radcliffe* (1934), 216 Wis. 356, 257 N. W. 171.

Changes in county government may be made where it is not practicable to carry on such government in a particular class of counties in the same manner as is carried on in other counties, provided there is a reasonable basis for diversity and the powers, duties, and functions of the county board remain the same. Accordingly, the classifications of counties according to population was held proper. *Bingham v. Board of Supervisors of Milwaukee County* (1906), 127 Wis. 344, 106 N. W. 1071, and *State ex rel. Scanlan v. Archibold* (1911), 146 Wis. 363, 131 N. W. 895.

An analysis of the operation of county government under ch. 59, Stats., prior to the enactment of sec. 59.031, Stats., and after its enactment, will illustrate the diversity which will exist in counties having a population of 500,000 or more and all other counties of the state.

Under sec. 59.02 (1), Stats., the powers of a county could only be exercised by the county board of supervisors. A majority vote of the board constitutes a quorum. There are 24 assembly districts presently in Milwaukee county so the membership of the board is 24. A majority vote of the quorum would be seven for Milwaukee county.

Under sec. 59.031 (6), Stats., an ordinance or resolution would not be effective for six days.

Under sec. 59.031 (6), Stats., the county executive is granted veto power over all acts of the board of supervisors of Milwaukee county and can only be overruled by a two-

thirds majority vote which would be 16 members in Milwaukee county.

Sec. 59.06 (1), Stats., provides:

"The board may, by resolution designating the purpose and prescribing the duties thereof and manner of reporting, authorize their chairman to appoint before June 1st in any year committees from the members of the board, and the committees so appointed shall perform the duties and report as prescribed in such resolution."

Under sec. 59.06 (1), Stats., the board or chairman if authorized by the county board appoints all committees.

Sec. 59.031 (2) (c), Stats., provides that the county executive appoint all members of all boards and commissions.

We find that the following portions of sec. 59.031, Stats., are unconstitutional: Sec. 59.031 (2) (b) "Such appointments shall not require the confirmation of the county board." Sec. 59.031 (5) "and may exercise the power to veto any increases or decreases in the budget under sub. (6)."

And that sec. 59.031 (6), Stats., entitled "County executive to approve or veto resolutions or ordinances; proceedings on veto" is unconstitutional in its entirety.

The legislature by enactment of the above-quoted unconstitutional provisions established an independent executive branch of government with veto power over the acts of the county board and thereby created a check-and-balance system for counties having a population of 500,000 or more in violation of the constitutional mandate requiring but one system of county government for the state.

*Severability of Sec. 59.031, Stats.*

Sec. 990.001, Stats., provides:

"CONSTRUCTION OF LAWS; RULES FOR. In construing Wisconsin laws the following rules shall be observed unless

construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:

. . .

"(11) *Severability.* The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, . . . such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

In *State ex rel. Broughton v. Zimmerman* (1952), 261 Wis. 398, 52 N. W. (2d) 903, this court, in citing *State ex rel. Wisconsin Telephone Co. v. Henry* (1935), 218 Wis. 302, 316, 260 N. W. 486, said (p. 409):

" 'It is well established that the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone.' "

Sec. 59.031, Stats., is silent as to the intent of the legislature with respect to the severability and, therefore, the general intent of the legislature as embodied in sec. 990.001 prevails.

The county executive under the rule as it now stands, after eliminating the invalid provisions thereof, can still serve as an important factor in the orderly growth and development of a county. We find the remaining provisions of ch. 327, Laws of 1959, to be a complete law, serving a reasonable purpose, and do not violate the one system of county government required in sec. 23, art. IV of the Wisconsin constitution.

*By the Court.*—It is declared and adjudged that those portions of ch. 327, Laws of 1959, sec. 59.031 (2) (b),

Stats., which provides "Such appointments shall not require the confirmation of the county board," and sec. 59.031 (5), which confers the power to veto increases or decreases in the budget, and all of sec. 59.031 (6), entitled "County executive to approve or veto resolutions or ordinances; proceedings on veto," are invalid. Ch. 327, Laws of 1959, is severable and the invalidity of these portions of the chapter does not invalidate the act as a whole.

The demurrer is overruled and the motion to quash denied, and the peremptory writ of mandamus granted.

FAIRCHILD, J. (*dissenting in part*). I dissent from the part of the court's judgment which declares the veto provision and part of the appointment provision of ch. 327, Laws of 1959, unconstitutional.

We must presume that the legislature had in mind all constitutional requirements, including sec. 23, art. IV. We should view the departures from uniformity which it provided for counties with more than 500,000 inhabitants as modifications which the legislature deemed necessary in order to make the government of a metropolitan county practicable. The legislature concluded that the special needs of a metropolitan county required not only that there be an administrative officer elected at large, but that he have the appointive and veto powers provided.

The only question before the court is whether the legislative finding on practicability is so fanciful or completely unfounded in reality that it could not have been made by reasonable men. In my opinion the size and concentration of the population of the county, the size and complexity of its governmental machinery, and the multiplicity of its special problems all reasonably tend to support the conclusion that the modifications made by ch. 327, Laws of 1959, were necessary in order to provide a practicable county government in a metropolitan county. Ch. 327 should not

be viewed as the creation of a second system, but as an adaptation of the existing system to special needs.

I am authorized to state that Mr. Chief Justice MARTIN and Mr. Justice BROADFOOT join in this opinion.