CITY OF WEST ALLIS and others, Appellants, v. MILWAU-KEE COUNTY, Respondents.*

*No. 307. Argued May 7, 1968.—Decided June 7, 1968.*
(Also reported in 159 N. W. 2d 36.)

* Motion for rehearing denied, with costs, on September 9, 1968.

358

362

For the appellants there were briefs by *William T. Schmid* of West Allis, city attorney for the city of West Allis; *Quarles, Herriott, Clemons, Teschner & Noelke* of Milwaukee, for the village of West Milwaukee; *Milton F. Burmaster* of Wauwatosa, city attorney for the city of Wauwatosa; *Francis W. Cathlina* of South Milwaukee, city attorney for the city of South Milwaukee, attorneys, and *L. C. Hammond, Jr.,* and *Ross R. Kinney,* both of Milwaukee of counsel, and oral argument by *Mr. Hammond.*

For the respondent there was a brief and oral argument by *Robert P. Russell,* corporation counsel.

HEFFERNAN, J.

*Does the legislative grant to the county of Milwaukee to construct and tax for the purpose of constructing refuse-disposal facilities infringe on the home-rule rights of municipalities.*

Ch. 62, Stats., constitutes the general charter for cities in the state of Wisconsin, and ch. 61 contains a grant of powers to villages. Sec. 62.11 (5) authorizes city councils to act "for the health, safety, and welfare of the public." Sec. 61.34 grants to village boards the power to act for the "health, safety, welfare and convenience of the public."

In *Hack v. Mineral Point* (1931), 203 Wis. 215, 233 N. W. 82, the statutory grant of power to cities was

discussed. Mr. Chief Justice ROSENBERRY, speaking for the court (p. 219) stated:

"That sec. 62.11 confers power far beyond that conferred in the so-called general welfare clause of the general charter as it stood prior to 1921 is plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it."

The mere fact that certain activities of a municipality are not proscribed and are therefore within the legislative grant of power, however, has nothing to do with the determination of the constitutional question of whether such activities are of local, as contrasted to statewide, concern. For example, sec. 62.11, Stats., in general terms, confers law enforcement authority upon the local municipality. Yet, we have pointed out in *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, that certain phases of law enforcement are matters of statewide concern.

While the power of villages and cities to construct and operate refuse-disposal facilities and incinerators is clearly within the general charter grant of power, ch. 328 of the Laws of 1957 also, and specifically, gives that authority to a county when its population exceeds 500,000.

Plaintiffs contend that this grant to the counties violates art. XI, sec. 3, of the constitution, which provides:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."

In *Van Gilder v. Madison, supra,* we concluded that, when the legislature deals with matters that are primarily of statewide concern, it may deal with them

free of any restriction contained in the home-rule amendment. The legislature can thus make effective a law touching on a matter of statewide concern in one city and not in another, provided that the classification is proper. The home-rule amendment does not limit the right of the legislature to deal with matters of statewide concern, even if, in so dealing, some cities and not others are affected. If, however, the matter enacted by the legislature is primarily of local concern, a municipality can escape the strictures of the legislative enactment unless the enactment applies with uniformity to every city and village.

It is contended by the plaintiffs that because secs. 59.07 (52) (b) and 67.04 (1) (w), Stats., apply only to Milwaukee county, the law is not uniform in application and, hence, if it concerns a local affair, must yield to the constitutional right of municipalities to determine their local affairs and government.

The trial court concluded that the erection of waste-disposal facilities in municipalities was a local affair. We conclude, because he discussed them in the context of charter grants of power, that he merely was saying that it was within the legislatively delegated authority of a municipality to engage in such activities. Both parties, however, appear to assume that the trial judge made a determination in constitutional terms. The determination of that point is not necessary for the solution of this case. It should be pointed out, however, that in construing home-rule amendments, it has generally been concluded that the disposition of garbage is a matter of statewide concern. 2 McQuillin, *Municipal Corporations* (1966 Rev. Vol.), p. 175, sec. 4.98. The trial judge, however, did not base his decision on the determination of whether or not a municipality was protected from the exercise of state power by its constitutional prerogatives of home rule. He concluded, correctly, that the home-rule amendment was irrelevant to the issue in this case.

A careful reading of the home-rule amendment, art. XI, sec. 3, makes it clear that not all of the relations between the cities and the state were to be governed by the home-rule amendment. The home-rule amendment, although empowering cities and villages to determine their "local affairs and government," further states that, "The method of such determination shall be prescribed by the legislature." The legislature in sec. 66.01, Stats., prescribed the method by which those powers shall be exercised. We do not herein determine that no home-rule powers exist unless exercised by charter ordinance, but sec. 66.01 [1] does make it clear that a city or village is to manifest its election not to be governed by a state law

---

[1] Sec. 66.01, Stats., provides in part:

"66.01. **Home rule; manner of exercise.** (1) Pursuant to section 3 of article XI of the constitution, the method of determination of the local affairs and government of cities and villages shall be as prescribed in this section.

"(2) (a) A 'charter ordinance' is any ordinance which enacts, amends or repeals the whole or any part of the charter of a city or village, or makes the election mentioned in subsection (4) of this section. Such charter ordinance shall be so designated, shall require a two-thirds vote of the members-elect of the legislative body of such city or village, and shall be subject to referendum as hereinafter prescribed.

"(b) Every charter ordinance which amends or repeals the whole or any part of a city or village charter shall designate specifically the portion of the charter so amended or repealed, and every charter ordinance which makes the election mentioned in subsection (4) of this section shall designate specifically each enactment of the legislature or portion thereof, made inapplicable to such city or village by the election mentioned in subsection (4) of this section.

"(3) . . . .

"(4) Any city or village may elect in the manner prescribed in this section that the whole or any part of any laws relating to the local affairs and government of such city or village other than such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village shall not apply to such city or village, and thereupon such laws or parts thereof shall cease to be in effect in such city or village."

by the passage of a charter ordinance. The legislature intended the constitutional right "to determine their local affairs and government" to be exercised by the passage of a charter ordinance electing not to be governed by a legislative enactment that would otherwise limit municipal activity.

The record fails to show that the municipalities herein attempted to exercise their home-rule powers by charter ordinance, the only way prescribed by statute. It is reasonable that they should not have done so, for there is no law applicable to them which they might seek to avoid. The law they object to delegated powers to Milwaukee county, an administrative branch of the state government itself. We see no evidence that the home-rule amendment was in any way intended to limit the power of the state to deal with its own agencies. Even assuming, without deciding, that the construction of incinerators and refuse-disposal facilities is a matter of local concern in a constitutional sense, it is apparent that the state is not thereby limited from conferring the same powers upon a county. The powers guaranteed by the home-rule amendment are those of self-determination for a particular municipality and cannot be exercised by it to determine the affairs of other branches of government. The trial judge correctly stated that the legislative enactments that the municipalities object to:

". . . deal with a grant of powers to counties. They do not restrict or limit any municipality in the ownership, construction and operation of incinerator facilities and dump sites nor require them to use or contract for the use of facilities which may be constructed by the County."

The plaintiffs appear to recognize the validity of the trial judge's conclusion but contend, conceding that the legislation on the face of it does not limit the cities' power, that nevertheless the practical effect is to make it financially impossible for a municipality to have its own separate refuse-disposal facilities. Although the

home-rule amendment and the legislative grants of power give municipalities wide latitude in their activities, there is, however, no legislative or constitutional guaranty that those powers can be exercised with immunization from the fiscal realities of municipal government. We have said in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 207, 213, 60 N. W. 2d 763, that "The legislature has plenary power over the whole subject of taxation." There is no constitutional guaranty that the state's power to tax will be exercised in such a manner as to make it financially possible for a municipality to exercise all the powers that it might conceivably have. Yet, the argument of the municipalities herein is that the legislature's power to authorize a county tax is constitutionally circumscribed by the fact that such a tax calls into question the wisdom of a municipal tax for the same purpose or undermines the ability of a municipality to collect such tax. While, obviously, legislative policy questions are thus presented, they are not of constitutional proportions and are better resolved by political than judicial means.

It is undoubtedly true that our many-layered structure of local government sometimes results in an expensive duplication of function. This is the price that Wisconsin citizens have been willing to pay for substantial local autonomy. However, it has never been claimed that efficiency is the principal virtue of democracy. It may be conceded that the erection of a countywide facility may make it unnecessary and uneconomical for local municipalities to maintain their own waste-disposal facilities. This, however, does not affect the constitutionality of the delegation to the county.

Nor do we see any objection properly cognizable by the courts in the fact that county facilities may be in part a duplication of municipal facilities. For example, county parks result in a tax upon the city taxpayer, yet they may be so located as to be of little beneficial use to the local municipality or its citizens. While the mere

fact that the question has not been raised heretofore is not controlling, it is significant that no constitutional objection has been raised to this or other duplicated facilities. The legislature, by its delegation of power to Milwaukee county, has determined that it is in the interests of the public generally to have what it hopes will be an adequate countywide system of refuse disposal. No provision of the home-rule amendment precludes the legislature from exercising its judgment in that respect. Whether its judgment is wise is not a decision for this court. The wisdom, expediency, and practicability of statutory provisions are legislative, not judicial, considerations.

*Does the delegation of the power to construct and finance refuse-disposal plants only to counties having a population of 500,000 or more violate art. IV, sec. 23, of the constitution.*

Sec. 23 provides:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable . . . ."

In the case of *State ex rel. Milwaukee County v. Boos* (1959), 8 Wis. 2d 215, 99 N. W. 2d 139, the law creating a county executive for Milwaukee county was upheld in its significant respects. The issue there, as here, was whether it was proper to confer special powers upon counties having a population of 500,000 or more. The court therein pointed out that two aspects of the constitutional amendment were involved: (1) That there shall be but one system of county government established, and (2) that the systems adopted shall be as nearly uniform as practicable. In *Boos* we said that, although the system itself must be unvarying, nevertheless, insofar as specific duties are devolved upon counties, certain variations were possible. The particulars of

county government from county to county may vary, but the nature of the county government was to be the same throughout the state. This court in *Boos* held that Milwaukee county, with a population in excess of 1,000,000, justified a classification in which the specific duties of the county could vary from that of counties not within the classification. It is well established that counties may be classified on the basis of population, providing there is a reasonable basis for this treatment; only the essential nature of the county government must remain uniform. In *Adams v. Beloit* (1900), 105 Wis. 363, 369, 81 N. W. 869, we stated:

"Classification by statute must be based upon some substantial and real differences of situation. It must be a distinction germane to the purpose of the law. It must not be based on existing circumstances only, so as to preclude additions to the class, and any law relating to the class may apply to all members of the class."

These rules of classification were made applicable to counties in the case of *Bingham v. Board of Supervisors of Milwaukee County* (1906), 127 Wis. 344, 348, 106 N. W. 1071.

The same rule was followed in *State ex rel. Scanlan v. Archibold* (1911), 146 Wis. 363, 131 N. W. 895. That case concluded that, if the rules of classification are complied with, there may be a class presently comprising but one county.

In the case of *Hjelming v. La Crosse County* (1926), 188 Wis. 581, 206 N. W. 885, the legislature attempted to confer certain powers on all counties containing cities of the third class. In that particular case the purpose of the law was to grant certain power in respect to the diking and controlling of rivers. The court held that there was no reasonable relationship between the problem of river and flood control and the fact that the county contained a city of a certain size. The classification was arbitrary and unreasonable and not germane to the purpose of the law.

The *Boos Case, supra,* also pointed out that changes in county government may be made where it is not practicable to carry on the usual government in a particular class of counties, provided there is a reasonable basis for diversity.

At the outset, in this case, we are confronted with the legislative finding that appears in sec. 59.07 (52) (b), Stats., that, "The powers conferred by this paragraph are declared to be necessary to the preservation of the public health, welfare and convenience of the county." We have said that such legislative findings are entitled to great weight and will not be upset unless patently unreasonable. *Wagner v. Milwaukee* (1923), 180 Wis. 640, 192 N. W. 994; *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. 2d 362.

It appears then that the government of one county may vary from that of the others, provided the system remains untouched, and that in their details the governments vary only to the extent that it is impracticable for them to be uniform. The classifications must be reasonable. Applying these tests to the instant case, we find no improper classification.

Although this matter is before us on demurrer, we are not obligated to close our eyes to all facts except those set forth in the complaint. It was so contended in *State ex rel. Scanlan v. Archibold, supra,* page 370. We said therein:

"This position is untenable. The law must be tested as to its constitutionality by its language in the light of such matters as the court will take judicial notice of."

It is undisputed, and we take judicial notice of the fact, that Milwaukee county is a metropolitan, urban area and the only one in the state of Wisconsin in which town government has wholly ceased to exist. Its population approximates 1,000,000, and it is ineluctable that refuse problems are directly related to the concentration of

population. We also are compelled to take cognizance of the legislative declaration that the legislation is necessary for public health, welfare, and convenience in Milwaukee county, while no such recognition has been given to the problems of other counties. We thus conclude that the classification is proper in that it is based on substantial and real differences from other classes and that the classification on the basis of population is germane to the purpose of the law.

The high concentration of population could well have compelled the legislature to conclude that a countywide refuse system was practicable in Milwaukee county but impracticable in other counties where the problem was essentially confined to isolated urban areas. These factors, taken as a whole, impel us to the conclusion that legislative treatment different from that accorded to other counties was reasonable in dealing with the problem of refuse in Milwaukee county. This legislation in no way affects the system of government itself, and the minor variation that is thus allowed obviously takes into consideration the impracticability of such a variation from the present norm to compel countywide refuse systems in all portions of the state.

The appellants contend that the court should order a fact-finding to determine whether or not conditions in Milwaukee county make it necessary to have an additional waste-disposal facility. They conclude that, if the additional facility is unnecessary, the special treatment accorded to counties of over 500,000 violates the county uniformity clause. This finding, however, has already been made by the legislature. It has determined that it is necessary and has merely left to the county the option of when to exercise the powers that the legislature considers to be imperative. Since the county board has proceeded to implement the authority given to it by the legislature, no fact-finding function remains to the court

unless there appears a patent unreasonableness. Such unreasonableness does not appear.

*Has the exercise by municipalities of the right to erect and own waste-disposal facilities preempted the field so as to preclude a county facility.*

Appellants contend that every municipality has either provided its own rubbish-disposal facility or has made contractual arrangements with other municipalities or private disposal companies. It is appellants' position that Milwaukee county is thus preempted from constructing a countywide system, which would result in a duplication of facilities. The appellants' sole legal support for this proposition is dicta appearing in this court's opinion in *Fort Howard Paper Co. v. Town Board* (1954), 266 Wis. 191, 63 N. W. 2d 122. That case involved the question of whether the town board of Ashwaubenon could establish a new sanitary district limited to the installation of storm sewers when there existed, within the town, previously created sanitary districts, which could have established storm sewers. The court, page 199, rejected this argument, stating:

"It appears from the record that neither of the previously organized districts has ever acted upon or exercised the power of installing storm-water sewers. There is, then, no actual conflict between any previously created district and the new, town-wide district of the respondent here. . . . Thus created, the new sanitary district does not interfere with the previously organized town sanitary districts which have no storm sewers."

The appellants would have us view this paragraph to conclude that, had the previously created sanitary districts in fact established storm sewers, the subsequent attempt to install a town-wide storm-sewer system would have been violative of the law. We cannot conclude that this court has sanctioned the principle asserted by the

appellants. The most that can be contended is that the court in *Fort Howard* concluded the problem did not exist, and it, therefore, was not obliged to meet the argument. We thus see no precedent in *Fort Howard* for the appellants' position.

The appellants essentially argue that it is a matter of public policy that, rather than to permit two levels of government in a county to duplicate facilities, the problem should be resolved, where there is dual authority, to limit the right to that municipality which first undertook the endeavor. In effect, this would permit the first in the field to have a monopoly irrespective of the efficiency or efficacy of the project. It is difficult to conceive that this was the public policy that the legislature relied on.

Even if we accept the appellants' rationale that, had there been an actual conflict in the storm-water systems proposed in Fort Howard, the situations are not analogous. The trial court pointed out this distinction and emphasized the fact that in the instant case no municipality was obliged to use the countywide facility nor was it prohibited from operating its own.

A conflicting sewer system might well, from an engineering viewpoint, be determined to be unfeasible unless it could operate unimpeded by the physical effects of conflicting systems. The only conflict of which the appellants complain is the conflict in the double tax burden that is required for the original financing. The legislature was obviously aware of the existing facilities in Milwaukee county and, in authorizing the county construction, knew that the county facility would either supplement or compete with the municipal and private systems. It nevertheless concluded that the grant of power to Milwaukee county was desirable. We see no evidence of any legislative intent to allow the first government unit on the scene to preempt the function. It should also be noted that the legislature contemplated other facilities, for it provided that only those munici-

palities using the county facility were to contribute to the operating costs.

*Are the proposed bonds being issued*
*for a public purpose.*

The appellants' final contention is that the county general-obligation bonds necessary for the financing of the incinerator would raise money not to be expended for a public purpose. The rule in Wisconsin is, of course, an exacting one, and this court has sharply limited the spending of public funds and has insisted that the levy of taxes and the expenditure of a government's money be for public purposes only.

We stated in *Heimerl v. Ozaukee County* (1949), 256 Wis. 151, 158, 40 N. W. 2d 564:

"Taxation for a private purpose is prohibited by the clause of the federal constitution that guarantees to every state a republican form of government (sec. 4, art. IV), as such a form of government forbids the raising of taxes for anything but a public purpose."

In *State ex rel. Thomson v. Giessel, supra,* page 215, we quoted with approval the rule appearing in 81 C. J. S., *States,* p. 1149, sec. 133:

". . . a public purpose, is a question for the legislature to decide, with respect to which it is vested with a large discretion, which cannot be controlled by the courts unless its action is clearly evasive. . . . Where a doubt exists whether the purpose of an appropriation is public or private, it will be resolved in favor of the validity of the appropriation . . . ."

In *State ex rel. Thomson v. Giessel, supra,* page 215, this court quoted with approval the rule stated in an early Wisconsin case, *Brodhead v. Milwaukee* (1865), 19 Wis. 658 (*624):

" 'To justify a court in declaring a tax void, and arresting proceedings for its collection, the absence of all

possible public interest in the purposes for which the funds are raised must be so clear and palpable as to be immediately perceptible to every mind.' "

There is no doubt, of course, that to spend public funds for garbage disposal is clearly for a public purpose. 15 McQuillin, *Municipal Corporations* (3d ed.), p. 50, sec. 39.21.

The essence of the appellants' argument, however, is that, since the county incinerator and waste-disposal plant is an unnecessary duplication of municipal facilities, no possible benefit can be secured by its erection and, hence, the funds are not used for a public purpose. We are, however, faced with the legislative determination appearing in sec. 59.07 (52) (b), Stats., that, "The powers conferred by this paragraph are declared to be necessary to the preservation of the public health, welfare and convenience of the county." While it may be argued by the appellants that no additional refuse facilities are necessary, we are not convinced beyond peradventure that this is so, nor if it is so now, that it will continue to be in the future contemplated by the legislature. Only if it is "clear and palpable" that there can be no benefit to the public is it possible for a court to conclude that no public purpose exists. We quoted with approval in *State ex rel. Thomson v. Giessel,* page 216, *Carmichael v. Southern Coal & Coke Co.* (1937), 301 U. S. 495, 514, 57 Sup. Ct. 868, 81 L. Ed. 1245:

" '. . . whether the present expenditure serves a public purpose is a practical question addressed to the lawmaking department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court.' "

We are satisfied that this tax, applying the above tests, is designed to raise funds to be expended for a public purpose.

*By the Court.*—Order affirmed.