NORTHWEST GENERAL HOSPITAL, Plaintiff,

Lillie GRIFFIN, Defendant and Third-Party Plaintiff-Appellant,

v.

Dr. Jerry N. YEE, Third-Party Defendant-Respondent.†

Court of Appeals

*No. 82–617. Submitted on briefs October 13, 1982.—Decided November 22, 1982.*
(Also reported in 327 N.W.2d 186.)

† Petition to review granted.

For the defendant and third-party plaintiff-appellant the cause was submitted on the briefs of *Paul F. Poehlmann* of *Strnad & Gossens, S.C.,* of Milwaukee.

For the third-party defendant-respondent the cause was submitted on the brief of *James G. Doyle* and *Michael T. Hopkins,* of counsel, of *Schellinger & Doyle, S.C.,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J. Lillie Griffin (Griffin) appeals from an order dismissing her third-party complaint against Dr. Jerry N. Yee (Yee) for payment for hospital treatment which Yee prescribed and which Griffin alleged was unnecessary. The trial court dismissed Griffin's complaint because it stated "a malpractice claim which has not been submitted to a medical panel as required by Chapter 655 Wis. Stats." We agree that a medical malpractice claim, even one which alleges no bodily injury, must first go to a ch. 655, Stats., malpractice panel, and accordingly affirm.

Griffin was injured on May 11, 1978, in an auto accident. She was treated by Yee, who prescribed hospitalization at Northwest General Hospital as part of her treatment. During Griffin's hospitalization she incurred a debt to the hospital for medical services in the amount of $5,484.80, and the hospital brought an action on contract to collect this debt. Griffin brought a third-party action against Yee, alleging that her hospitalization and treatment were unnecessary and unreasonable. Her third-party complaint was dismissed.

Chapter 655, Stats., sets forth the requirements to be met and procedures to be followed in actions against health care providers. Section 655.009 enumerates certain requirements which must be met in an "action to recover damages on account of *malpractice* . . . ." [Emphasis added.] Section 655.007 places all patients who have "a claim for *injury* or death on account of mal-

practice . . ." [emphasis added], within the purview of Chapter 655. Section 655.04(1), however, which governs patients' claims, sets forth the procedures to be followed in processing claims for *"bodily* injury or death." [Emphasis added.] There is, then, an inconsistency between the three terms, malpractice, injury or death, and bodily injury or death, that govern the scope of ch. 655.

Griffin contends that the more particular "bodily injury or death," rather than the general "malpractice," should govern the scope of applicability of ch. 655, Stats. While there are rules of statutory construction to that effect,[1] we believe that the legislative intent of ch. 655 would be foiled by exempting medical malpractice claims in which there is no claim of bodily injury.

As has been said, three different sections of ch. 655, Stats., use three different terms, each of which might be construed to govern the scope of ch. 655. Ambiguity can be created by the interaction of separate statutes, as well as by the interaction of the words and structures of a single statute. *State v. Kenyon,* 85 Wis. 2d 36, 49, 270 N.W.2d 160, 166 (1978). When statutes are ambiguous, it is permissible to look to the legislative intent, which is to be found in the language of the statute in relation to its scope, history, context, subject matter and object to be accomplished. *Wisconsin Environmental Decade, Inc. v. Public Service Commission,* 81 Wis. 2d 344, 350, 260 N.W.2d 712, 715 (1978).

---

[1] When confronted with a statutory inconsistency of this nature, it is the duty of this court, when possible, to construe statutes on the same subject matter in a manner as to harmonize these provisions in order to give each full force and effect. *Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979); *Tamminen v. Aetna Casualty & Surety Co.,* 105 Wis. 2d 413, 419, 314 N.W.2d 879, 882 (Ct. App. 1981).

Chapter 655, Stats., was extensively discussed in *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 261 N.W. 2d 434 (1978), which involved various unsuccessful challenges to the chapter's constitutionality. There, our supreme court pointed out some of the legislative findings which attended the initial passage of ch. 655,[2] first of which was the tremendous increase in the number of suits for damages arising from professional patient care. The court also noted that the resolution of a malpractice claim under traditional tort litigation had been found to require an average of nineteen months, while a patients' compensation panel must render a decision within 150 days after the submission of controversy is filed. *Id.* at 508, 261 N.W.2d at 442. It is evident, then, that ch. 655, Stats., was promulgated largely in the interests of judicial economy for the benefit of the litigants.

Further, the *Wilkie* court noted that "[s]creening panels are required to consider and decide highly technical medical issues. Without the special expertise of medically-trained panel members, the central purpose of the entire statutory scheme would be frustrated." *Id.* at 516, 261 N.W.2d at 446. Though Griffin's claim is for "pecuniary injury," the determination of even that kind of claim is contingent upon the allegation of unnecessary treatment, a question which would surely benefit from the special expertise of a malpractice panel.

In *Mortenson v. Miller*, 99 Wis. 2d 209, 217, 298 N.W. 2d 546, 550 (1980), our supreme court stated that "[b]y chapter 655 the legislature opted for processing claims through patients compensation panels and provided that no court action for *medical malpractice* may be maintained before the matter is reviewed by a patients compensation panel." [Emphasis added.] Although that

---

[2] *See* § 1, ch. 37, Laws of 1975. Legislative findings carry great weight. *City of West Allis v. Milwaukee County*, 39 Wis. 2d 356, 372, 159 N.W.2d 36, 44 (1968), *cert. denied*, 393 U.S. 1064 (1969).

general observation was not made in the specific context of harmonizing the three statutory terms involved in this case, it does illustrate the thrust of ch. 655, Stats., by utilizing health care expertise in resolving malpractice claims against health care providers.

We believe that to carve out an exception to this principle on the strength of ambiguous provisions in the chapter itself would both violate the obvious purpose of the legislation to provide a pre-court forum for medical malpractice claims, and would work an absurd result. Griffin's claim, albeit "pecuniary" in nature, still arose out of an alleged incident of medical malpractice. A determination of whether Griffin's treatment was unnecessary is as dependent upon medical expertise as would be any similar claim which alleged bodily injury as well. To allow litigants to elect, by virtue of the nature of their allegations, avoidance of a malpractice panel is unreasonable, especially when the expertise of the panel is equally valid and important, regardless of whether bodily injury is alleged.

We affirm the trial court's order dismissing Griffin's complaint.

*By the Court.*—Order affirmed.